BACHOOBAI WORONZOFF-DASCHKOFF, Respondent, *v.* ROMAN WORONZOFF-DASCHKOFF, Appellant.

Argued January 17, 1952; decided March 13, 1952.

*M. MacSchwebel, Morton Brauer* and *Harry Silver* for appellant. I. The proof herein, as a matter of law, is insufficient to support a decree of annulment. (*de Baillet-Latour* v. *de Baillet-Latour,* 301 N. Y. 428; *Schaeffer* v. *Schaeffer,* 160 App. Div. 48; *Lapides* v. *Lapides,* 254 N. Y. 73; *Jennings* v. *Jennings,* 186 Misc. 1021; *Feig* v. *Feig,* 232 App. Div. 172; *Griffin* v. *Griffin,* 122 Misc. 837, 209 App. Div. 883.) II. Fraud to vitiate

a marriage contract (a) must be made with a proven intent to deceive; (b) must be so material as to go to the very essence of the marriage contract, and (c) must be proven by corroborated evidence. (*di Lorenzo v. di Lorenzo,* 174 N. Y. 467; *Rutstein* v. *Rutstein,* 221 App. Div. 70; *Fisk* v. *Fisk,* 6 App. Div. 432; *Wendell* v. *Wendell,* 30 App. Div. 447; *Glean* v. *Glean,* 70 App. Div. 576; *Shrady* v. *Logan,* 17 Misc. 329; *Anonymous,* 21 Misc. 765; *Laage* v. *Laage,* 176 Misc. 190; *Shinker* v. *Shinker,* 271 App. Div. 688; *Roth* v. *Roth,* 97 Misc. 136; *Sobol* v. *Sobol,* 88 Misc. 277.)

*William G. Mulligan, Alexis C. Coudert* and *Lewis B. Greenbaum* for respondent. I. This marriage was properly annulled because the proof shows that appellant contracted it with the secret intention of using the marital relationship to mulct respondent of her wealth and without intending to enter into a permanent union. (*Ryan* v. *Ryan,* 156 Misc. 251; *Robert* v. *Robert,* 87 Misc. 629; *Thurber* v. *Thurber,* 186 Misc. 1022; *Security-First Nat. Bank of Los Angeles* v. *Schaub,* 71 Cal. App. 2d 467; *Bohmert* v. *Bohmert,* 241 N. Y. 446; *de Baillet-Latour* v. *de Baillet-Latour,* 301 N. Y. 428; *Feynman* v. *Feynman,* 168 Misc. 210.) II. The marriage was properly annulled because the proof shows that (a) appellant made premarital representations that he had never taken money from any woman and that following his marriage to respondent he would support himself; (b) these representations were willfully false, and (c) they were material to respondent and she relied on them in consenting to marry appellant. (*Shonfeld* v. *Shonfeld,* 260 N. Y. 477; *de Baillet-Latour* v. *de Baillet-Latour,* 301 N. Y. 428; *Haas* v. *Haas,* 298 N. Y. 69; *Young* v. *Valentine,* 177 N. Y. 347; *di Lorenzo* v. *di Lorenzo,* 174 N. Y. 467; *Brackett* v. *Griswold,* 112 N. Y. 454; *Keviczky* v. *Lorber,* 290 N. Y. 297.) III. The facts on which this annulment is based are proved by " other satisfactory evidence " in addition to the " declaration or confession of either party to the marriage " within the meaning of section 1143 of the Civil Practice Act. (*de Baillet-Latour* v. *de Baillet-Latour,* 301 N. Y. 428; *Boyd* v. *Boyd,* 252 N. Y. 422; *McKee* v. *McKee,* 267 N. Y. 96; *Monypeny* v. *Monypeny,* 171 App. Div. 134; *Caleca* v. *Caleca,* 278 App. Div. 771.)

DESMOND, J. This appeal is taken, by our leave, from an affirmance of a judgment annulling a marriage because of the husband defendant's alleged fraud (Domestic Relations Law, § 7, subd. 4; Civ. Prac. Act, § 1139).

On March 24, 1947, in New York City, there was solemnized the wedding of plaintiff, a woman thirty-two years old, born in India, and possessed of great wealth, to defendant, an impoverished émigré Russian nobleman, forty-five years of age. They had known each other for about three months. The marriage had been urged and encouraged by defendant's younger brother who had been acquainted with plaintiff for some years, and who had been her unsuccessful suitor. Plaintiff knew that defendant was poor. Defendant knew that plaintiff was rich. A European honeymoon, paid for by plaintiff, continued until August, 1947, when plaintiff went to India on business matters, and defendant sailed alone to New York to await her return. The parties cohabited while in Europe, but not afterwards. When plaintiff came back to New York City, she lived with defendant at her home for about a month and there then ensued (in December, 1947) a quarrel in which, according to her testimony and the findings here, defendant upbraided plaintiff for her meanness in money matters and told her that he had married her for her money, and not for love. She told him, then, to leave the house and he did, " and that was the end between us." He was locked out of the house, and never returned.

This suit by plaintiff for an annulment on the ground of fraud was commenced in May, 1949. The complaint alleges that plaintiff's consent to the marriage was procured by defendant's fraud in that, as alleged, he falsely represented to her that he had always earned his own living and had never taken money from any woman, that his purpose in marrying her was to contribute to her happiness and her support and perform faithfully his husbandly duties, that he was an American citizen and had not forfeited that citizenship, that he was in every way qualified to carry the duties and responsibilities of married life and that his social position was high in Europe and New York. In a second cause of action there are allegations of a conspiracy by defendant and his brother whereby the former was to, and did, meet, court and marry plaintiff. The

complaint continues with averments that defendant's representations were false in that he had not regularly earned his living for years, that he had received large sums of money from women, including a divorced wife in Europe, that he was a ne'er-do-well without social position, and a hypochondriac given to fits of uncontrollable temper and to periods of sexual impotency, that his purpose, successfully accomplished, was to obtain large sums of money from plaintiff for himself and his relatives and that, because of long residence in South America, his American citizenship was revocable.

Defendant's answer contained, besides denials, a counterclaim in which, on various grounds, he demanded an annulment, but this counterclaim was withdrawn at the trial.

The trial court found that defendant had made all the representations alleged in the complaint, and that plaintiff had relied on them in giving her consent to the marriage. Those representations, so held the trial court, were all false in that defendant had, in Paris, received a large sum of money from his former wife, as a price for divorce, that defendant's sole purpose in marrying plaintiff was to get money for his own life of idleness and for his relatives, that to accomplish this he permitted plaintiff to pay all the honeymoon expenses and took money from her, that he attempted secretly to collect commissions from the contractor who remodeled plaintiff's home, that he tried to get money from plaintiff on the pretext of starting a business and tried to get her to set up a trust fund with him as her trustee, that he never made any real effort to find work or to support himself, and that he at no time offered " to fulfill his marital obligation and promise to plaintiff to provide a home for her and to support himself ". Such were the findings.

Leaving aside for a moment the matter of corroboration as required by section 1143 of the Civil Practice Act (see *de Baillet-Latour* v. *de Baillet-Latour,* 301 N. Y. 428), we now examine the proof. There was testimony that defendant's brother was active in promoting and hurrying the marriage, and that defendant told plaintiff that he had never taken money from any woman and that he intended to support himself. There is no testimony that he ever promised to support plaintiff or provide a home for her, a promise which would have been of small consequence if made, in view of the disparate finances of the parties and

the fact that the wife had an elaborate home of her own in New York. It could reasonably be inferred from defendant's acts and attitudes that he was largely influenced by plaintiff's wealth, and that he got money from her and tried to get more. He had worked, before marriage, as a hotel employee and as a dancing instructor or dancing partner in New York, Paris and the Argentine Republic, and he never claimed to have any other occupation or means of support. The wife and her brother provided the honeymoon expenses and defendant's pocket money, but they did that not unwillingly. Defendant was sexually impotent at times, but cohabited with his wife on many occasions, before her departure for India, five months after the marriage. When she left on that journey, she sent defendant a loving message. There was testimony that defendant and his brother got secret commissions on the decoration and renovation of plaintiff's home. Defendant was subject to colds and other minor ailments, and on occasions flew into sudden and stormy rages, unaccompanied by physical violence. He never got a job or tried to find one. He urged plaintiff to make him her trustee and unsuccessfully importuned her for capital with which to open a haberdashery business in New York City. When they had their final quarrel, he told her that he had married her for money and not for love, and he told his wife's brother that his (defendant's) former wife had to pay a great sum to rid herself of him, and that plaintiff would have to pay much more. Plaintiff ordered him from her house, and he left.

Defendant, on that showing, was no model of chivalry or propriety. That proof, believed by the trier of the facts, was enough, we will assume, to expose him as a fortune hunter, a sluggard, a hypochondriac, and a man who took his promises lightly. But this is a suit to annul a marriage for fraud, and, while we have, for better or worse, retreated (*di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467; *Shonfeld* v. *Shonfeld*, 260 N. Y. 477, 481) from the old idea that marriages can be voided only for frauds going to the essentials of marriage, that is, consortium and cohabitation, it is, nonetheless, still the law in New York that annulments are decreed, not for any and every kind of fraud (*Mirizio* v. *Mirizio*, 242 N. Y. 74, 80; *Svenson* v. *Svenson*, 178 N. Y. 54, 59) but for fraud as to matters "vital" to the marriage relationship only (*Lapides* v. *Lapides*, 254 N. Y. 73, 80).

Premarital falsehoods as to love and affection are not enough, nor disclosure that one partner "married for money" (*Schaeffer* v. *Schaeffer,* 160 App. Div. 48, 49; *Feig* v. *Feig,* 232 App. Div. 172, 177, 178). Lack of robust health is not enough (*Riley* v. *Riley,* 73 Hun 575, 576). Of course, a husband is under a legal duty to support even a well-to-do wife (*Young* v. *Valentine,* 177 N. Y. 347, 352) and, in ordinary cases the man's intent, premaritally formed, not to support his wife might perhaps be enough to nullify a marriage. But this husband never promised his wife to support her, and, obviously was never expected to. He told her he had earned his living before marriage, and, for all that appears, he had. He promised to find a job after marriage, but, surely, this was not a consideration "vital" to this particular marriage. He falsely warranted that he had never taken money from women, but premarital affairs much graver than that are insufficient for the judicial voiding of a marriage. We do not discuss defendant's supposed frauds as to his American citizenship or as to the identity of the officiating clergyman at the wedding, since there is no proof at all of any fraud in either connection.

Summing up the case, there is here nothing to disprove defendant's assertions that he intended to, and did, perform the fundamental duties of the marriage relationship (thus distinguishing this case from *de Baillet-Latour* v. *de Baillet-Latour, supra*). If this defendant deceived his wife, it was not as to any vital element of their union. It would serve no purpose to repeat here what this court, and many another court, has said as to marriage being "more than a personal relation between a man and woman", as to its being "an institution involving the highest interests of society" and as to its control by law "based upon principles of public policy affecting the welfare of the people of the State" (*Fearon* v. *Treanor,* 272 N. Y. 268, 272; see *Maynard* v. *Hill,* 125 U. S. 190, 205). We repeat the language of Bishop on Marriage and Divorce (6th ed., Vol. 1, § 167): "In that contract of marriage which forms the gateway to the status of marriage, the parties take each other for better, for worse, for richer, for poorer, to cherish each other in sickness and in health; consequently a mistake, whether resulting from accident, or, in general, from fraudulent practices, in respect to the character, fortune, health, or the like,

does not render void what is done '' (see to the same effect, *Lapides* v. *Lapides, supra,* p. 80).

Concluding, as we do, that the proof here, even if it had been corroborated as required by section 1143 of the Civil Practice Act, was not sufficient for an annulment decree, it is not, strictly speaking, necessary or appropriate for us to make an investigation as to the presence or absence of the needed corroboration. However, lest we be misunderstood, we comment on that feature of this case, also. We held in *de Baillet-Latour* v. *de Baillet-Latour* (*supra,* p. 434) that section 1143 means that, besides confessions or declarations of the parties, there must be '' other material from other sources, substantial and reliable enough to satisfy the conscience of the trier of the facts ''. We find no '' other material '' of that kind or quality, in this record. Every bit of direct proof of false representations is in the form of a '' declaration or confession '' by defendant. Recognizing this, plaintiff points to these circumstances as being corroborative: that defendant had premarital sexual relations with plaintiff, that he took secret commissions from the building contractor, that he passed off as a Protestant minister the rabbi who solemnized the marriage, that he was unable to consummate the marriage on the wedding night, that he was locked out of the house by plaintiff's brother, that a few weeks thereafter he sued his wife for a separation, that he pleaded in this action, but later withdrew, a '' scandalous '' counterclaim, and that he objected to the exclusion of the public from the courtroom during the trial of this action. We do not think that any of those facts, or all of them together, constitute '' other satisfactory evidence '' of the alleged fraud. The meaning of that phrase in section 1143 of the Civil Practice Act has been so recently explored by this court in *de Baillet-Latour* v. *de Baillet-Latour* (*supra*) that repetition is unnecessary.

The judgments should be reversed and the complaint dismissed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.