Louis B. Heller, J.
Plaintiff seeks a judgment of annulment of his marriage to defendant either on the ground of her willful concealment of her prior mental illness (first cause of action) or of her having induced the marriage by falsely representing that she would bear children when such was never her intention (second cause of action) or judgment of divorce because of defendant’s alleged cruel and inhuman treatment of plaintiff (third cause of action). Defendant counterclaimed for divorce on the basis of plaintiff’s alleged conduct which she contends constitutes cruel and inhuman treatment. During the trial of the action defendant moved to amend her answer to include an additional counterclaim of separation by reason of plaintiff’s failure to contribute to her support.
After a trial at which the parties and their witnesses testified including defendant’s psychologist, the court finds that plaintiff has not sustained his burden of proof on his first cause of action nor has defendant sustained her burden of proof on her counterclaims.
The evidence as adduced establishes that the parties were married on September 7, 1968; that prior to their marriage plaintiff had agreed that their children may be reared in the Jewish faith though plaintiff was of another faith; that for a period after their marriage defendant insisted on plaintiff’s use of contraceptives; that thereafter and on plaintiff’s persuasion, defendant agreed to normal intercourse which resulted, as claimed by defendant, in her becoming pregnant on two separate occasions, both of which as she had advised plaintiff and his witnesses were successfully aborted; that plaintiff had leased and furnished a larger apartment in an elevator apartment house for the greater convenience of the defendant believing that she would then bear him children; but when plaintiff discovered that he had been misled and defendant never intended to have children, he ceased cohabitation with defendant in December, 1970. Defendant thereafter left plaintiff to take up residence in an apartment commune occupied by unmarried adult males and females.
*286 The crux of defendant’s opposition to plaintiff’s second cause of action for annulment is plaintiff’s alleged lack of evidence that defendant willfully and falsely represented that she intended to have children and plaintiff’s failure to prove that he had not condoned such fraud by his cohabitation with the defendant for over two years.
Aside from the clear testimony that plaintiff had specifically agreed prior to the marriage to permit the children to be reared by defendant in her faith, implicit in the marriage contract is the representation that each spouse intends to have children even if neither had expressed or intimated their intention prior to marriage. (Gerwitz v. Gerwitz, 66 N. Y. S. 2d 327; Schulman v. Schulman, 180 Misc. 904 and de Baillet-Latour v. de Baillet-Latour, 301 N. Y. 428).
The representation having been made, what proof may the court accept to establish that it was false when made? Conceivably resort must be had to a retrospective graph of the thinking of defendant as pencilled by her statements and conduct. Her confession, even if testified to by disinterested witnesses, is not alone sufficient, but other satisfactory evidence of the facts must be produced (Domestic Relations Law, § 144, subd. 2; see, also, Woronzoff-Daschkoff v. Woronzoff-Daschkoff, 303 N. Y. 506). The injunction on the court is to require corroboration. The nature and weight to be given to the other facts is not, however, to be scaled by the rule of evidence, but by “ the guidance of the judicial conscience.” (Winston v. Winston, 165 N. Y. 553, affd. 189 U. S. 506). The falsity of the representation can be inferred from defendant’s subsequent statements made in conversations or from given explanations and from general conduct (de Baillet-Latour v. de Baillet-Latour, supra). “ Were it otherwise, a marriage could go on for years, with pre-marital promises repeatedly and continuously broken, and an annulment action withheld until * * * the lapse of many years.” (Darling v. Darling, 105 N. Y. S. 2d 475, 477). This is so because “ the pertinent facts * * * are almost exclusively a part of the private lives of the husband and wife, hidden from the world in the seclusion of the bedchamber, with little evidence available other than such words and declarations of the parties * * * and the acts and circumstances surrounding such statements ’ ’ (Richardson v. Richardson, 200 Misc. 778, 782).
Plaintiff’s insistence on natural intercourse after a period of cohabitation with contraceptives and defendant’s statements of her becoming pregnant and aborting the alleged pregnancies *287 constitute the “other evidence ” of the falsity of her intention to have children. It is not as claimed hy defendant’s counsel a question of whether it was medically possible for defendant to have aborted her pregnancies by her vigorous activities but whether such activities spelled out her intention not to have children. The indulgence by defendant in her devised methods of producing an abortion reflect her intentions, irrespective of whether they were medically sound. Her volunteering this information to plaintiff’s disinterested witnesses constitutes the corroborating circumstances, the “ other evidence.”
The issue presented to this court is whether a little over two years of cohabitation conclusively establishes condonation barrifig plaintiff’s cause of action. Better stated, shall a spouse be penalized by his attempts to preserve a marriage 1 ‘1 The law should view with approval [his] efforts to maintain the marriage until [he] is definitely convinced of the lack of sincerity in [his wife’s] intention.” (Capen v. Capen, 137 N. Y. S. 2d 223, 224).
Plaintiff’s testimony was frank and honest. He made positive efforts to induce defendant to want and have children. He leased and furnished a larger apartment to make it more conducive for defendant to bear his child. He clung to the hope that she may carry out a full pregnancy. “ The fact that [he] made efforts thereafter to make [her] perform does not constitute acquiescence in the fraud. ’ ’ Plaintiff may not be deemed “ with 1 full knowledge of the facts’ [to have] condone [d] defendant’s-•'fraud; and plaintiff should not be penalized for [his] attempt to preserve the contract.” (Doroff v. Doroff, 283 App. Div. 688). As was aptly stated in Williams v. Williams, 11 N. Y. S. 2d 611, 617: ‘1 An annulment of this marriage will not trench upon any vested interests or punish anyone except the offending party.”
Having determined that plaintiff is entitled to a judgment of annulment of the marriage, the court will refer to his third cause of action for divorce on the ground of defendant’s cruel and inhuman treatment only as it relates to the question of whether a spouse guilty of misconduct as distinguished from legal fault should be rewarded with support provisions.
Defendant’s testimony and that of her psychologist established that their basic complaint against plaintiff is that he is too “ compulsive a worker,” too concerned with the problems of a livelihood to realize that such traits of industriousness are not in keeping with defendant’s concept and mores of late twentieth century life in this satellite age. Such devoted atten *288 tion to his career represented to them insensitivity to the needs of a wife and thus cruel and inhuman treatment. Defendant’s amateurish attempt at theatrics on and off the witness stand was mirrored by her overacting. One moment she had to be aided to the witness chair and then when asked for an exhibit reacted with complete poise and control. Her psychologist cast herself in the same role — evasive, lacked records of treatment and was positive in no area other than that defendant should continue the two visits a week. When the psychologist was presented with the knowledge, that had been withheld from her by defendant, that defendant abandoned plaintiff to live in an apartment commune with unmarried males and females, the psychologist attempted to justify such conduct. *
Defendant was not concerned with the impact on plaintiff of her cold and indifferent conduct nor of her open and notorious preference of living in a comnjune to living at home as a dutiful wife. It mattered not to*defendant that plaintiff was compelled to receive medical care and treatment. The attempt made to mask defendant’s weaknesses as a witness with the plea that less proof should be required of her because of her “disability”, citing Schechter v. Klanfer (28 N Y 2d 228), and Wartels v. County Asphalt (29 N Y 2d 372) is self-defeating. Each of the cited authorities involved amnesiac plaintiffs with loss of ability to testify with clarity as to the accident. However, both of them in their cautionary warning ‘1 that amnesia is easily feigned ’ ’ condemn witnesses who suffer lapses in guard instead of lapses in memory. But for the fact that the court has held that plaintiff is entitled to a judgment of annulment, the court would also find for plaintiff on his third cause of action for divorce.
The Legislature in enacting section 236 of the Domestic Relations Law spelled out the prevalent philosophic thinking of the courts. The wife in this current trend of economic equality and greater opportunity for self-sufficiency and financial independence should not be converted into a nonproductive member of society, a permanent drone who ofttimes becomes the figurative albatross (Phillips v. Phillips, 1 A D 2d 393, affd. 2 NY 2d 742; Brownstein v. Brownstein, 25 A D 2d 205). Defendant, a qualified dental hygienist, should not be carroted into complete dependence on alimony. Alimony is not to be equated with a pension.
Section 236 of the Domestic Relations Law permits the granting of support to a wife “ as, in the court’s discretion, justice requires,” even if the wife does not succeed in her action or *289 counterclaim and may be guilty of misconduct, ‘ ‘ unless such misconduct would itself constitute grounds for separation or divorce.”
In Johnson v. Johnson (295 N. Y. 477, 480, 481) Judge Fuld, in interpreting section 1140-a of the Civil Practice Act, the precursor of section 236 of the Domestic Relations Law, pointed out that the Legislature “ sought to remedy * * * the unhappy plight of the innocent wife ” who hesitated to have her marriage annulled ‘ ‘ at the cost of relinquishing all claim to support ” or where the marriage is voided because of the wife’s insanity or for any of the other causes where the wife is statutorily at fault. It was “ left * * * to the court’s own discretion in all cases * * * to ‘ give such direction * * * as justice requires. ’ ” Neither section 1140-a of the Civil Practice Act nor section 236 of the Domestic Relations Law as originally enacted and as thereafter amended intended to give to a spouse in an annulment action any greater rights than in a separation or divorce action where her misconduct 1 ‘ would itself constitute grounds for separation or divorce.” (Whittleton v. Whittleton, 3 Misc 2d 542; Shenker v. Shenker, 18 Misc 2d 606, and Jacobson v. Jacobson, 36 Misc 2d 59). To hold otherwise would emasculate the discretionary authority granted to a court and create an unintended artificial classification of misconduct limited only to actions for divorce and separation. The innocent spouse is not to be accorded less than ‘ ‘ what justice requires ’ ’ merely because the court chose the cause of action on which he is to have judgment. The rationale of Math v. Math, (39 A D 2d 583) and the cases therein cited support this conclusion.
This court will not compel plaintiff to furnish the defendant the placebo crutch of two visits weekly to her psychologist nor to support her in her new mode of commune living which her counsel attempts to justify by a reference to “ universities [that] have both sexes share the same dormitory and, on occasion, the same floor of the dormitory.” Upon the facts here presented defendant is not entitled to an alimony award.
Defendant had moved by order to show cause dated February 4, 1972 for allowance of counsel fees. The motion was referred for determination together with the trial of this action. Defendant’s counsel allege that they have been paid the sum of $1,500 and request an additional allowance. Under the circumstances of this action, no additional award is made and the motion is denied.
Defendant had obtained by order made by Mr. Justice Mobbissey on September 30, 1971, an award of temporary ali *290 mony of $100 weekly. That order was still in effect at date of trial. When plaintiff defaulted in making the required payments, defendant moved to have him punished for contempt. Her motion was granted and an order was made and entered on December 6, 1971, by Justice Judge adjudging plaintiff in contempt and fining him the full arrears of $1,100, but permitting him to purge himself by the payment of the sum of $5 weekly until the full fine is paid. Neither of the two orders may be disturbed or modified by this court. Accordingly, plaintiff will be required, if he has not done so, to pay the regular weekly alimony of $100 as ordered by Mr. Justice Mobbissey to date of the trial and will further be required to continue the weekly payments of $5 until he has purged himself of the order of Justice Judge.
Defendant’s counterclaims are dismissed. Plaintiff is entitled to judgment as prayed for as herein indicated.
Settle judgment on notice in accordance with this decision.