OPINION OF THE COURT
Joseph Jaspan, J.
In this action for divorce, both the plaintiff wife and defendant husband seek a dissolution of their 10-year childless marriage. The court finds no lingering spark of affection between the parties and for the reasons set forth herein the marriage should be dissolved.
*1057 The plaintiff has established by a preponderance of the credible evidence that the defendant husband has engaged in a course of conduct constituting cruel and inhuman treatment of his wife to the extent that it has endangered her physical and mental well-being and rendered it improper for plaintiff to cohabit with the defendant (Domestic Relations Law, § 170, subd [1]).
The parties were married on June 28, 1970.
The marital difficulties started in February, 1975 when the husband told his wife that his commitment to the marriage was waning and uncertain and that he was then having an affair with a “student” at the college where he is now employed as dean of students.
In spite of the efforts of the plaintiff to save her marriage, her husband became more distant, refused marriage counseling, stated he no longer loved her, absented himself from the home with increasing frequency and ultimately on July 31, 1979 moved out.
These events had a predictable effect on plaintiff who became nervous and depressed, required sedatives and consulted on four occasions with a therapist.
While the defendant denies that he was having an affair with specifically named persons, he offered no serious challenge to plaintiff’s version of the facts, and seems to be primarily interested in avoiding any obligation to pay alimony.
He contends that his wife’s unwillingness to have children and to engage in sexual intercourse unless he uses a contraceptive constitutes a defense to plaintiff’s cause of action and such cruel and inhuman treatment on her part as to warrant the granting to him of a decree of divorce.
During the early years of the marriage, the parties attended school and had no immediate interest in having children. It is defendant’s testimony that within the past four or five years he had many discussions with his wife about raising a family and that she unilaterally refused to bear children and that these discussions culminated in a heated argument on July 31, 1979, as a result of which he left the marital home and established a separate residence.
*1058 The plaintiff acknowledges that she did not want to become pregnant but testified that her husband willingly agreed since he did not want the responsibility of children.
This court doubts the defendant’s resolve on this issue in view of his declining interest in his marriage since early 1975, but in view of plaintiff’s acknowledged refusal to bear children perceives a legal issue which should be resolved.
I find no articulated premarital promise to raise a family or evidence of any religious considerations which might have influenced either of the parties or have any relevance to the determination herein.
The question is whether, under these circumstances, the refusal to have children, is, in any event, a defense to plaintiff’s cause of action or the basis for independent relief either on the theory of cruelty, or constructive abandonment.
There is no statutory defense to an action for divorce based upon defendant’s cruel and inhuman treatment (Biamonte v Biamonte, 57 AD2d 1052) and none is pleaded. Provocation which incites the other spouse’s acts may constitute a defense (Mante v Mante, 34 AD2d 134), but in this case there is no credible evidence that plaintiff’s conduct or her refusal to bear children antedated or provoked defendant’s behavior.
 While defendant cannot thereby defeat plaintiff’s action for a divorce, he can nevertheless neutralize the economic effect thereof by a finding that he is entitled to a dual divorce upon the basis of his counterclaim (Belandres v. Belandres, 58 AD2d 63) which alleges cruel and inhuman treatment by his wife.
Defendant has not, however, sustained his burden of offering objective proof of physical or mental injury to him as required by statute to support his action (Hessen v Hessen, 33 NY2d 406; Anderson v Anderson, 58 AD2d 679).
If defendant can prevail it is on the theory of constructive abandonment, a refusal on the part of one spouse to fulfill basic obligations springing from the marriage contract. (Diemer v Diemer, 8 NY2d 206; Mirizio v Mirizio, 242 NY 74, 81.) Defendant’s pleadings will be deemed to be *1059 amended to allege such a counterclaim under subdivision (2) of section 170 of the Domestic Relations Law although in its language it refers only to the grounds set forth in subdivision (1) of that section, to wit, cruel and inhuman treatment.
In a similar situation, the court in Diemer v Diemer (supra, p 212) wrote: “we have advanced far beyond that hypertechnical period when form was all-important and a pleader had to attach the correct label to his complaint, at the risk of having it dismissed.”
The parties in this case engaged in sexual intercourse even at times when their marriage was in a state of collapse and thus the basic principle of Mirizio (supra) is not applicable. The allegations here are limited to the demand by the wife that her husband use contraceptives and that conception be avoided.
In Diemer (supra, p 210) the Court of Appeals noted that: “Obviously, not every denial of a marital right will be sufficient to support a charge of abandonment. The criterion is how fundamentally the denial strikes at the civil institution of marriage. Where primary rights and duties are involved, where the denial goes to one of the foundations of the the marriage, it is the policy of our law to allow a separation from bed and board.”
No case has been cited by the litigants or found by this court which directly rules on the issue as to whether the right to sire or bear children is so fundamental to marriage that a unilateral denial thereof should result in divorce or separation.
Courts have frequently emphasized the importance of the family including the essential basic civil right of determining when to conceive and how to raise one’s children (Stanley v Illinois, 405 US 645). No marriage may be viewed as harmonious or successful if the marriage partners are fundamentally divided on such important and vital issues. (Planned Parenthood of Mo. v Danforth, 428 US 52, 71.)
Unlike marital sexual relations, which are, per se, part of the essential structure of marriage, the parties are free to decide when and if and how often they will have children. *1060 Physical, emotional and economic factors are key to the determination.
The problem arises when the parties are divided on the issue. If there were a premarital representation of an intent to have children upon which the other spouse relied and the representation was false, an annulment may be granted. (Avnery v Avnery, 50 AD2d 806, opp dsmd 38 NY2d 997; Rich v Rich, 40 AD2d 846.) But where, as in this case, there was no such articulated promise the determination cannot be made on principles of contract. Attempts to read an implicit representation in the marriage contract have not won approval.
In Gerwitz v Gerwitz (66 NYS2d 327, 329) the court wrote: “Implicit in the marriage contract is the representation that the parties will have normal and natural relations and that they will not do anything which will frustrate the normal and natural result of those relations. Where nothing is said prior to the marriage by a spouse on the subject of children, it is presumed he or she intends to enter the marriage contract with all the implications, including a willingness to have children.”
This holding that implicit in the marriage contract is the representation that each spouse intends to have children was followed in Bruno v Bruno (70 Misc 2d 284) which granted an annulment even though there was no prior expression of such an intention.
However, this ruling in Bruno was reversed by the Appellate Division (45 AD2d 707) and the annulment was denied in the absence of proof of a willful misrepresentation of her desire to bear children.
In the absence of any express or implied agreement to have children, the wife can unilaterally reach the ultimate decision.
The Supreme Court held in Planned Parenthood of Mo. v Danforth (supra) that a woman may have an abortion in the first trimester of pregnancy without the consent and even over the objection of her husband. It wrote (supra, at p 71) : “We recognize, of course, that when a woman, with the approval of her physician but without the approval *1061 of her husband, decides to terminate her pregnancy, it could be said that she is acting unilaterally. The obvious fact is that when the wife and the husband disagree on this decision, the view of only one of the two marriage partners can prevail. Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor. Cf. Roe v. Wade, 410 U.S., at 153.”
It follows naturally that if a woman can terminate a pregnancy without the consent of her husband, she should be allowed to make the unilateral determination to prevent it.
It would be futile to rule that a woman must submit to a pregnancy and then hold that she may legally abort it.
Of course, the constitutional right to an abortion without the consent of a husband does not automatically preclude a finding that such an action is destructive of the marriage or that a refusal to bear children is grounds for divorce. But the State Legislature has not done so and this court may not write into the law a provision which makes marriage more vulnerable. The State has an interest in preserving the family unit, but, as stated in Planned Parenthood of Mo. v Danforth (428 US 52, 71, supra), it may not by action in this area protect “ ‘the mutuality of decisions vital to the marriage relationship.’ ”
The contraceptive issue is more easily resolved. Defendant did not refuse to have intercourse because his wife insisted upon his use of a contraceptive. His consent, however reluctant, negates the theory of abandonment.
It is noted that in Fink v Fink (30 NJ Super 531) and in Kirk v Kirk (39 NJ Super 341) the courts denied a divorce on the grounds of desertion, where one spouse insisted upon -the use of a contraceptive and the other, although objecting, continued to cohabit.
The parties cite Barretta v Barretta (182 Misc 852), which held that the wife’s insistence on the use of a contraceptive is a defense to an action for separation. The court there relied upon section 1142 of the Penal Law which made it a crime to sell, lend or give away contraceptives. This *1062 statute is no longer on the books and in any event would have been held unconstitutional under Eisenstadt v Baird (405 US 438).
That ruling in Barretta, referred to above, has not been considered by any appellate court or cited in any other case since it was published in 1944.
The defendant has not sustained his counterclaim and the plaintiff is entitled to judgment granting her a divorce and denying the defendant a dual divorce.