**KYLE K. FRANCIS, Plaintiff**

v.

**KADE WARRELL FRANCIS, Defendant**

Family No. D321/84

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 26, 1985

JOHN L. MADURO, ESQ., St. Thomas, V.I., *for plaintiff*

KADE WARRELL FRANCIS, St. Thomas, V.I., *pro se*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The court is required to determine whether misrepresentations regarding one's financial obligations are sufficient grounds for an annulment of a marriage. The court concludes that they are not.

Kyle K. Francis has petitioned the court to annul her June 16, 1984 marriage to Kade Warrell Francis. Mrs. Francis alleges that before they were married Mr. Francis fraudulently misrepresented the state of his finances. She further alleges that she relied on these false representations, that she would not have married Mr. Francis had she known his true financial condition, and that she ceased to cohabit with him when she learned the truth.[1] Finally, she alleges that as a result of her reliance on Mr. Francis' statements she has suffered embarrassment, grief, and financial damage. Mr. Francis admits the truth of all of these allegations.

While fraud in the inducement of a marriage is grounds for an annulment, 16 V.I.C. § 2(2) (1964), the court does not find that Mr. Francis' statements constitute "fraud" as that term is used in section 2. There is no reported Virgin Islands case that addresses this issue, but it is well settled in a majority of the states that the term "fraud" as used in annulment proceedings is not to be construed as broadly as it is to void an ordinary contract.[2] See, e.g., Marshall v. Marshall,

---

[1] The specific allegations in the complaint are:

4. That prior to the marriage, since defendant was a divorcee, plaintiff and defendant underwent counselling with Father Clark of the St. Andrews Anglican Church. They discussed their financial status, and defendant represented to plaintiff at the time, that the only expense that he had to take care of was his rent and that was up to date. He told her that his telephone, electricity, and gas bills were up to date. He further represented to her that his child support payments were up to date. That at another session of the parties with Father Clark, defendant still denied that he had any of the aforementioned obligations to take care of.

5. That plaintiff relying on these representations, and believing that he was telling the truth, married the defendant, only to discover not long after the marriage that the defendant had deceived her. She discovered that the defendant was behind in his child support payments for several months, and had appeared in · court regarding same. At that time also, defendant had another case pending. That he was behind in his rent in the amount of $874.00, and that from a list of creditors, prepared by himself, he was indebted to such creditors in the sum of $11,753.00, including the sum of $450.00, which was owed to a local attorney.

[2] This rule is made applicable to the Virgin Islands by 1 V.I.C. § 4 (1967):

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as

264

300 P. 816, 818 (Cal. 1931). Courts in most states have ruled that before fraud will be sufficient to allow an annulment it must be shown that the fraud concerns the essentials of the marital relationship, such as cohabitation or consortium.[3] See, e.g., Woronzoff-Daschkoff v. Woronzoff-Daschkoff, 303 N.Y. 506, 104 N.E.2d 877, 880 (1952); Security-First National Bank of Los Angeles v. Schaub, 162 P.2d 966 (Cal. App. 1945); Marshall v. Marshall, supra, at 817; Chipman v. Johnston, 130 N.E. 65 (Mass. 1921).

In Chipman v. Johnston, supra, for example, an annulment was denied to a woman who went through a form of marriage with a man who falsely and fraudulently represented his identity, the place where he made his home, the nature of his business, and money he said he had on deposit. The parties lived and cohabited together as husband and wife for no more than nine days and then the man disappeared. The Supreme Judicial Court of Massachusetts concluded:

> It is not every error or mistake into which an innocent party to a marriage may fall, even though induced by disingenuous or false statements, silences or practices, which affords grounds for its annulment. Manifestly wicked deception was perpetrated upon the petitioner. That alone is not enough to vitiate a marriage duly solemnized and fully consummated. Fraud, in order that it be ground for annulment, must go to the essentials of the marriage relation.
>
> . . .
>
> After the ceremony of marriage and the subsequent cohabitation, brief though it was, a change of status took place affecting both the parties and the community. A relation thereby sprang into existence which for important reasons the law recognizes and takes under its protection. It is a relation which cannot be lightly disregarded.

Id. 130 N.E. at 66.

As long ago as 1862, in what has been declared by Homer H.

---

generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

[3] The court relies on several New York cases in this opinion. While New York purports to apply a less demanding "vital to the marital relationship" standard, see, e.g., Woronzoff-Daschkoff v. Woronzoff-Daschkoff, supra, in practice the results mirror those of states applying the majority rule. Moreover, as the cases cited in the text of this opinion reveal, even under New York's standard, misrepresentation of financial matters is insufficient to permit an annulment.

Clark in his treatise The Law of Domestic Relations (1968) as the "most influential American case," Reynolds v. Reynolds, 3 Allen (85 Mass) 605 (1862), it was established "that misrepresentations about character, health, fortune or temper are deemed immaterial and furnish no ground for annulment." Clark, supra, § 2.17. The kinds of fraud that have been found to form a basis for an annulment are (1) misrepresentations as to pregnancy, e.g., Reynolds v. Reynolds, supra; (2) misrepresentations concerning physical or mental health, e.g., Stone v. Stone, 136 F.2d 761 (D.C. Cir. 1943), and (3) misrepresentations concerning the intent with which the marriage is contracted, such as an intent not to consummate the marriage, e.g., Anders v. Anders, 224 Mass. 438, 113 N.E. 203 (1916).

■ Misrepresentations of financial matters, however, do not concern the essentials of a marriage relationship and as such have been specifically rejected as grounds for annulment. Woronzoff-Daschkoff v. Woronzoff-Daschkoff, supra; Shonfeld v. Shonfeld, 260 N.Y. 477, 184 N.E. 60 (1933); Avnery v. Avnery, 50 A.D.2d 375, 806 N.Y.S.2d 888 (1975); Marshall v. Marshall, supra. The Francises have alleged no more here. More importantly, even assuming financial misrepresentation could provide a basis for annulment, the misrepresentations alleged here are not flagrant enough to form the basis for an annulment.

■ This court, therefore, joins many other courts that have considered such issues and notes that marriage is "more than a personal relation between a man and woman." It is "an institution involving the highest interests of society." See, e.g., Woronzoff-Daschkoff v. Woronzoff-Daschkoff, 104 N.E.2d at 880. Consequently, while a reading of Virgin Islands law and 16 V.I.C. § 2(2) might suggest that marriages can be terminated almost at will, this court declines to find that any provision of that law allows the very existence of a marriage to be denied on the grounds proposed here.

## ORDER

The court having this day issued a Memorandum Opinion, it is

ORDERED that the petition for annulment is denied; and it is further

ORDERED that the plaintiff is granted 15 days to show cause why this case should not be dismissed or to file an amended petition seeking a divorce.