■ ROBERT F. FLACKE, as Commissioner of Environmental Conservation of the State of New York, et al., Appellants-Respondents, v NL INDUSTRIES, INC., Respondent-Appellant. (Action No. 1.) ROBERT F. FLACKE, as Commissioner of Environmental Conservation of the State of New York, Appellant-Respondent, v FEDERAL INSURANCE COMPANY et al., Respondents-Appellants. (Action No. 2.) [644 NYS2d 404] —Spain, J.

From 1958 through 1981, defendant NL Industries, Inc. owned and operated a manufacturing plant in the Town of Colonie, Albany County. There NL produced aircraft components, missile components and military equipment using a manufacturing technique which required, in part, the processing of

depleted uranium. This process created chips and slivers which were burned in a furnace known as a chip melter. Until 1978, NL vented radioactive uranium 238 from its chip melter directly into the atmosphere; in that same year NL installed a precipitator and a bypass stack on the chip melter in order to minimize the release of radioactive particles into the atmosphere. By the end of 1979 it had become clear that large amounts of radioactive waste were still being released into the atmosphere. In contemplation of the renewal of NL's emission permits, plaintiff* and NL agreed, in December 1979, to enter into an administrative consent order committing NL to limit its emissions and to monitor, analyze and report those emissions as specified in the order. The consent order also required that NL post a $200,000 performance bond, subsequently written by defendant Federal Insurance Company, to assure NL's compliance with the order.

In February 1980, it was determined that NL was exceeding the emissions limits set by the consent order and NL voluntarily agreed to shut the factory down on February 6, 1980; plaintiff thereafter filed action No. 1 wherein the complaint alleged violations of the consent order and continuing violations of 6 NYCRR former parts 201 and 380. Plaintiff sought, *inter alia*, statutory penalties and an injunction restraining NL from burning any chips beyond those already stockpiled at the factory. NL resumed limited operations, with continuing court approvals, until preexisting contractual obligations were fulfilled and, thereafter, NL closed the plant. In December 1980 plaintiff filed action No. 2 seeking, *inter alia*, forfeiture of the bond. In 1984 NL transferred the property to the United States Department of Energy which embarked on a multimillion dollar cleanup of the property site.

In July 1993 plaintiff moved, *inter alia*, for partial summary judgment in action No. 1 seeking the minimum statutory penalty of $250 for each of the alleged 5,945 violations; NL cross-moved for summary judgment dismissing the complaint on the ground of laches. By separate motion plaintiff also moved for summary judgment against NL and Federal in action No. 2; NL cross-moved for summary judgment against plaintiff dismissing the complaint on the ground of laches, and Federal moved for summary judgment against NL on its cross claim for indemnification. Supreme Court denied all motions. All parties appeal the denial of their respective motions.

---

* The Commissioner of Environmental Conservation and the State of New York are the plaintiffs in action No. 1; the Commissioner of Environmental Conservation is the sole plaintiff in action No. 2. For simplicity, the term plaintiff will hereinafter be used to refer to both.

We affirm. Initially, we reject NL's contention that it is entitled to summary judgment dismissing each of the actions upon the equitable doctrine of laches. It is well settled that a laches defense is unavailable against a governmental entity when it is "acting in a governmental capacity to enforce a public right or protect a public interest" (*Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 177, n 2, *cert denied* 476 US 1115; *see, Matter of Fowler v City of Saratoga Springs*, 215 AD2d 819, 820; 75 NY Jur 2d, Limitations and Laches, § 331, at 536-537). A similar rule applies with respect to the defense of laches against an administrative agency (*see, Matter of Levey [Catherwood]*, 33 AD2d 1066, 1067; 75 NY Jur 2d, Limitations and Laches, § 332, at 537). Here, plaintiff was clearly acting in its governmental capacity as gatekeeper of the environment, thereby severely limiting the use of a laches defense in any subsequent enforcement proceeding. We do not believe, as NL asserts, that the circumstances in this case require that the principle in *Heckler v Community Health Servs.* (467 US 51) be applied. There, the United States Supreme Court applied a balancing test in determining whether estoppel against the government should be enforced (*see, supra,* at 59-61; *see also, Matter of E.F.S. Ventures Corp. v Foster,* 71 NY2d 359, 370-371).

Moving next to plaintiff's motions for summary judgment, we agree with Supreme Court that plaintiff is not entitled to summary judgment in either action. Initially, the proponent of a summary judgment motion must make a prima facie showing of an entitlement to judgment as a matter of law sufficient to demonstrate the absence of any material issue of fact (*see, Zuckerman v City of New York,* 49 NY2d 557, 562; *Speranza v Payea,* 225 AD2d 987). Only after the movant has established a prima facie case must the opponent produce evidentiary proof in admissible form to defeat the motion (*see, Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Stevens v Bast Hatfield, Inc.,* 226 AD2d 981). Here, in action No. 1 plaintiff alleges entitlement to summary judgment on 5,945 violations which can be broken down into two main categories: alleged violations of the 1980 consent order and alleged violations predating the consent order. In support of the motion, plaintiff submitted, *inter alia,* an affidavit of Paul Merges, Chief of the Bureau of Radiation in the Department of Environmental Conservation (hereinafter DEC); notably, Merges' affidavit is based upon his review of DEC's file rather than his personal knowledge. Merges alleges, *inter alia,* that NL committed 47 discharge violations in January 1980. In response, NL contends that these violations were not the result of its negligence or

willful misconduct, but rather were due to circumstances beyond its reasonable control and therefore excused by the *force majeure* clause contained in the consent order. That clause provides that NL must notify plaintiff immediately of any condition not caused by NL's negligence or willful misconduct which would make compliance impossible. Plaintiff argues that NL's response to the situation was dilatory and that NL was thus negligent. However, the parties disagree about what the response was and whether it was reasonable. These are issues of fact precluding summary judgment.

Plaintiff further contends that NL violated paragraph I (a) of Schedule A of the consent order, which provided that for the first five months of 1980 NL would not discharge more than 416.67 microcuries of uranium into the atmosphere. Notably, violations of paragraph I (a) of Schedule A are not alleged in the complaint. In any event, plaintiff contends that NL violated this paragraph six times in January 1980 and another 169 times during the remainder of the five-month period. Significantly, all of these subsequent operations were with court approval and plaintiff does not dispute that if the January 1980 emissions are excluded, the emissions from the succeeding days would not exceed the limit imposed by paragraph I (a) of Schedule A. Thus, because a question of fact already exists as to the January 1980 emissions, the subsequent emissions hinge on resolution of that issue. Accordingly, summary judgment should not be granted with respect to these alleged violations. Understanding that the nonmoving party is entitled to every favorable inference that can be drawn from its submissions (*see, Negri v Stop & Shop*, 65 NY2d 625, 626; *Rizzo v Lincoln Diner Corp.*, 215 AD2d 546), we conclude that an issue of fact exists regarding the alleged negligence and/or willfulness of NL's conduct in emission discharge at the factory in January 1980. We further conclude that plaintiff failed to set forth a prima facie showing of an entitlement to summary judgment regarding all post-January 1980 alleged violations.

Plaintiff's allegation that NL failed to monitor daily emissions from individual stacks also presents issues of fact. NL has proffered evidence that although it possessed permits for all stacks, in fact all stacks were not in use on a daily basis. Plaintiff's attempt to shift the burden to NL by asserting conclusory allegations, unsupported by personal knowledge, is misplaced. Where plaintiff has allowed these actions to languish for more than a decade, it should not be entitled to the inference that NL's inability to produce some of its records at this juncture definitively means that the monitoring was never done and the reports never compiled.

Next, by terms of the consent order, if it is determined that NL complied with the consent order, plaintiff will be precluded from proceeding on the alleged preconsent order violations; therefore, summary judgment with respect to the alleged preconsent order violations was properly denied. Finally, any liability on the part of Federal will be based solely upon a finding that NL violated provisions of the consent order. The absence of a summary judgment against NL at this point in the litigation supports Supreme Court's denial of plaintiff's motion for summary judgment seeking forfeiture of the bond. Having made such determinations, we need not address Federal's contention that Supreme Court erred by denying its summary judgment motion against NL.

Crew III, J. P., White, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is affirmed, without costs.