■ STATE OF NEW YORK et al., Respondents, v VINCENT WILLIAMSON et al., Appellants. [779 NYS2d 616]—

Spain, J. Appeal from a judgment of the Supreme Court (Cannizzaro, J.), entered March 10, 2003 in Albany County, which, inter alia, granted plaintiffs' motion for summary judgment.

Following a decade-long endeavor to bring defendants' waste tire storage and recycling operations into compliance with state environmental laws, plaintiffs commenced this action seeking closure and full remediation of defendants' facilities and civil penalties.[1] During the pendency of the action, a tremendous tire fire occurred at one of defendants' facilities, causing egregious harm to the environment. Thereafter, plaintiffs moved for summary judgment. Supreme Court granted the motion, assessing $15 million in penalties against defendants and directing them to provide a financial surety in the amount of $1 million.[2] Defendants appeal.

We conclude that Supreme Court properly granted summary judgment. Since the 1960s, defendants have operated several waste tire storage, recycling and resale facilities in New York State. The largest of these occupies two separate parcels—one

---

1. Criminal sanctions were also pursued and, in 2000, defendants Vincent Williamson and Mohawk Tire Recycling, Inc. pleaded guilty to almost 40 criminal counts involving their transporting waste tires throughout the state without a valid permit.

2. Plaintiffs moved for summary judgment against all defendants except Philip Rechnitzer, the chief financial officer of defendant Mohawk Tire Recycling, Inc. Accordingly, references herein to defendants do not include Rechnitzer.

in the Town of Halfmoon, Saratoga County (hereinafter the Upper Mohawk site) and the other in the Town of Waterford, Saratoga County (hereinafter the Lower Mohawk site).[3] The Upper and Lower Mohawk sites (hereinafter collectively referred to as the site) are in close proximity, separated only by a utility right-of-way occupied by electric and gas lines owned by Niagara Mohawk and a parcel of land owned by General Electric Company, which operates a plant nearby.

In the late 1980s, following the enactment of revised solid waste legislation which expressly acknowledged plaintiffs' authority to regulate waste tire storage facilities (*see* ECL 27-0703 [6], as amended by L 1989, ch 88, § 1; 6 NYCRR 360-13.1 *et seq.*), defendant Vincent Williamson attempted to obtain a permit for the site. Negotiations between the parties ensued, resulting in the execution of a consent order in 1990, modified in 1992, which required remediation of the site and compliance with applicable regulations. Thereafter, in 1993, defendant Mohawk Tire Storage Facility, Inc., in which Williamson and defendant Kathryn Williamson (hereinafter collectively referred to as the Williamsons) held shares, obtained a permit to operate a waste tire storage facility on the site, which allowed the storage of up to 2.8 million tires and required a financial surety to be provided. After that permit expired by its own terms in July 1995, the Department of Environmental Conservation (hereinafter DEC) denied an application to renew it. However, in March 1995, defendant Mohawk Tire Recycling, Inc., which is owned by the Williamsons, submitted a proposal for a tire recycling operation on the Lower Mohawk site and registered with DEC as a waste tire retreader and seller.

Following defendants' continued failure to properly arrange the waste tires at the site into piles, implement a fire safety plan, or otherwise remediate the site in any way, a second consent order was executed in 1996. That order prohibited defendants from bringing additional waste tires onto the site for storage and required the annual removal of 100,000 tires from the site, the improvement of roads so that firefighters would be able to access the site and the submission and execution of an acceptable fire safety plan. Defendants received several extensions delaying the prohibition against accepting more waste tires at the site, but were notified that, as of July 1, 1997, absolutely no more waste tires could be brought onto the site.

---

**3.** This action also alleges violations at a waste tire storage site in the City of Watervliet, Albany County, as well as mining violations, but because defendants failed to raise any issues as to those violations in their main brief, we do not address them (*see Fisher v Jackstadt*, 291 AD2d 689, 691 n [2002]).

After execution of the 1996 consent order, blatant violations persisted; the number of tires stored at the site actually increased and defendants failed to maintain proper records or submit reports to DEC. In addition, after DEC informed defendants that their proposed fire safety plan was deficient in numerous respects, but that other aspects of it could be implemented, defendants failed to implement the acceptable portions of the plan or to submit a revised fire safety plan.

Plaintiff Commissioner of Environmental Conservation issued a summary abatement order in June 1999 against a number of the defendants, ordering them to immediately stop accepting waste tires, create passable access roads and implement an acceptable fire safety plan. In so doing, the Commissioner noted that the condition of the site, which had tires near the electric lines and an exposed gas pipeline within the Niagara Mohawk right-of-way, combined with the ease with which the public could access the site, could easily result in a fire that could have devastating environmental and public health impacts on surrounding communities, as well as on a nearby creek and the Hudson River. DEC ultimately upheld that summary abatement order and revoked a waste transporter permit held by defendants.

Plaintiffs also commenced this action in June 1999 and obtained a temporary restraining order prohibiting defendants from engaging in any waste tire storage activities on the site and forcing them to deal with fire safety and security concerns there. Supreme Court (Hughes, J.) then granted a similar preliminary injunction against defendants, and gave plaintiffs authority to enter the site and conduct remediation efforts. On the day before this action was commenced, the Williamsons filed for bankruptcy. That bankruptcy proceeding was dismissed without prejudice, but they later obtained a bankruptcy discharge in Vermont, where they had moved and started a new waste tire recycling operation.

By the time DEC commenced remediation efforts at the site, it was estimated to contain 11 million tires, many illegally buried or in pits. In March 2002, fire broke out at the Lower Mohawk site. The fire burned for nine days and was battled by firefighters from over a dozen volunteer fire companies, causing flames hundreds of feet high, the closure of the neighboring General Electric plant for two days, contamination of the Hudson River and forcing the Town of Waterford, Saratoga County to shut down its drinking water treatment plant for several days.

Viewing the evidence in the light most favorable to defendants

(*see Trionfero v Vanderhorn*, 6 AD3d 903, 904 [2004]), we nevertheless conclude that Supreme Court properly granted judgment to plaintiffs as a matter of law. As the proponents of a motion for summary judgment, plaintiffs "must make a prima facie showing of an entitlement to judgment as a matter of law sufficient to demonstrate the absence of any material issue of fact" (*Flacke v NL Indus.*, 228 AD2d 888, 890 [1996]; *see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Plaintiffs have made such a showing here, relying on the detailed affidavits and testimony of individuals who have been involved with the site over a period of several years, photographs and videotape of the site, and other documentary evidence to demonstrate defendants' illegal operation of the site without a permit, persistent and numerous violations of relevant statutes, regulations and operational requirements and flagrant disregard of the terms of the 1996 consent order.

As such, the burden shifted to defendants to demonstrate, through evidence in admissible form, the existence of material questions of fact requiring a trial (*see Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]; *Zuckerman v City of New York, supra* at 562). Defendants have failed to do so. Initially, defendants contend that DEC's "central allegation, that [d]efendants operated their facility without [DEC] authorization, encompassed factual issues that should be subject to trial." Their argument in support of this proposition, however, completely fails to support their position. Defendants point to no material fact which would cast doubt on the conclusion, amply supported by plaintiffs' documented evidence, that defendants willfully continued to operate the site without authorization, acting in near total disregard of all attempts by plaintiffs to induce compliance with defendants' statutory and regulatory obligations to maintain a safe, environmentally sound and orderly waste tire facility. Instead, defendants offer a summary which amounts to nothing more than a recitation of the tortured procedural history of their efforts to comply with rules and regulations governing their business, apparently hoping that the complexity of the process will be accepted as an excuse for noncompliance.

To the extent that defendants raise specific, unresolved factual issues with regard to the violations established by plaintiffs' prima facie case, they are immaterial. For example, defendants' claims that plaintiffs inaccurately measured some of the tire piles at the site or mischaracterized reusable road material or wood pallets as waste are simply not worthy of resolution given the multitude of factually established violations

which more than adequately justify the penalty imposed by Supreme Court. Likewise, defendants' varied attempts to excuse their admitted noncompliance because of the practical, legal and financial difficulties with which they were faced—i.e., that attempts to reconfigure the site to achieve compliance caused some of their tire pile size violations and that the proximity of a canal near the site and their attempts at stabilizing the roads by dumping debris justified some of their site access violations—are unpersuasive inasmuch as the dangerous conditions at the site were initially caused by defendants' illegal actions and/or inactions. Other purported issues of fact relied upon by defendants, such as their claims that they were exempt from fencing and reporting requirements, that some of the offending tires were not "waste tires" subject to regulation by plaintiffs, and that they adequately prepared and implemented appropriate fire plans, are simply belied by unrefuted record evidence.

Defendants' argument that Supreme Court erred in holding Kathryn Williamson, defendant Lisa Williamson, and defendant L&W Recycling liable for all of the violations is unpreserved for our review, as defendants did not raise the issue before Supreme Court (see Cahill v Harter, 277 AD2d 655, 656 [2000]). In any event, were we to address the issue, we would conclude that those parties were properly held liable. L&W Recycling was owned by Kathryn Williamson, was transferred to Lisa Williamson as the sole shareholder and officer, and was apparently transferred back to the Williamsons before they filed for bankruptcy. It is also the entity to which some assets owned by other defendants—namely, at least a dozen tractor trailers—were transferred, and appears to be the new tire recycling business operated by Vincent Williamson and Lisa Williamson in Vermont. Indeed, defendants' Vermont tire operation was originally to be run by "Mohawk Tire," presumably referring to another defendant corporation. Under the circumstances, the relationship between L&W Recycling, Lisa Williamson and other defendants is such that holding L&W Recycling and Lisa Williamson liable is justified (see Austin Powder Co. v McCullough, 216 AD2d 825, 826-828 [1995]). Further, as Kathryn Williamson is a shareholder, owner and/or officer of several of the closely held defendant corporations and was aware of at least some of the violations, we perceive no error in holding her personally liable as well, either as an officer (see People ex rel. Spitzer v Telehublink Corp., 301 AD2d 1006, 1008-1009 [2003]) or as an owner and/or shareholder of those corporations (see Austin Powder Co. v McCullough, supra at 826-827; State of New York v Della Villa, 186 Misc 2d 490, 500-501 [2000]).

Nor is there any merit in defendants' contention that the

penalties imposed by Supreme Court were discharged by the Williamsons' 2001 bankruptcy. A bankruptcy discharge does not serve to discharge a debtor from "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [provided the debt] is not compensation for actual pecuniary loss" (11 USC § 523 [a] [7]; *see Kelly v Robinson*, 479 US 36, 50-51 [1986]). The judgment here is clearly not intended to reimburse plaintiffs for their expenditures to clean the site. In fact, plaintiffs disclaimed any interest in restitution for remediation costs. Instead, defendants' liability is based on the statutory penalties available for their violations, and a review of the record reveals that the penalty was intended to punish defendants and deter others from engaging in similar conduct (*see* ECL 71-2703 [1], [5]; *Whitehouse v LaRoche*, 277 F3d 568, 573-574 [1st Cir 2002]). As such, the penalty in this case falls squarely within the exception to the discharge contained in 11 USC § 523 (a) (7) (*see In re Strong*, 305 BR 292, 296-297 [Bank App 2004]). Inasmuch as plaintiffs concede the validity of defendants' similar objection to that portion of the judgment requiring that defendants provide a $1 million financial surety, we modify the judgment to remove that provision.

Finally, given the scope of defendants' violations, which evince a willful disregard of their responsibilities under the Environmental Conservation Law, and noting that penalties in excess of $80 million would have been permissible, we perceive no error in Supreme Court's decision to impose a $15 million total penalty and to permanently enjoin defendants from engaging in waste tire operations in New York (*see Matter of Manzo & Son v New York State Dept. of Envtl. Conservation*, 285 AD2d 504, 505 [2001]). We have considered defendants' remaining contentions and find them to be without merit.

Mercure, J.P., Peters, Carpinello and Kane, JJ., concur. Ordered that the judgment is modified, on the law, with costs to plaintiffs, by reversing so much thereof as granted plaintiffs' motion for summary judgment seeking $1 million financial surety from defendants; motion denied to that extent; and, as so modified, affirmed.