(October 28, 2008)

■ In the Matter of HARRY J. TUTUNJIAN, Individually and as Mayor of the City of Troy, et al., Appellants, v JAMES J. CONROY, as Chair of the Troy City Council Charter Commission, Respondent, et al., Respondents. [865 NYS2d 768]—

Rose, J. Appeal from a judgment of the Supreme Court (Egan, Jr., J.), entered October 21, 2008 in Rensselaer County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78 and Election Law § 16-104 (2), to, among other things, enjoin the Rensselaer County Board of Elections from placing a proposed charter amendment by the Troy City Council Charter Commission on the November 4, 2008 general election ballot in the City of Troy, Rensselaer County.

This proceeding involves competing charter revision proposals for the City of Troy, Rensselaer County—one submitted by a commission appointed by petitioner Harry J. Tutunjian, the Mayor of the City of Troy, and the other submitted by a commission appointed by the Troy City Council. Both proposals were transmitted by respondent City Clerk of the City of Troy to the Rensselaer County Board of Elections and the Board, in turn, placed identical questions on the November 4, 2008 general election ballot—namely, "Shall the new City Charter proposed by the City Charter Commission be adopted?"

Petitioners thereafter commenced this proceeding seeking, among other things, to enjoin the Board from placing the City Council Charter Commission's proposal on the ballot. In so doing petitioners, in addition to asserting various procedural infirmities, contended that Municipal Home Rule Law § 36 (5) (e) accords priority to the proposal submitted by the Mayor's Charter Commission and, hence, the competing proposals could not simultaneously appear on the same ballot. Respondent James J. Conroy, the chair of the Troy City Council Charter Commission, answered and commenced a separate proceeding against, among others, the Mayor, seeking to invalidate the proposal submitted by the Mayor's Charter Commission on procedural grounds. Supreme Court denied both applications, rejecting the parties' various procedural claims and concluding that the plain language of Municipal Home Rule Law § 36 (5) (e) permitted submitting competing charter proposals to the voters at the November 4, 2008 general election. As to any confusion engendered by the Board's placement of identical questions on the ballot, Supreme Court found that such confusion could be avoided by identifying each of the proposed charters by their source, i.e., the Mayor's Charter Commission's

proposal and the City Council Charter Commission's proposal.[1] This appeal by petitioners ensued.

Petitioners, as so limited by their brief, contend only that Municipal Home Rule Law § 36 (5) (e) precludes the voters from considering any charter proposal other than the one submitted by the Mayor's Charter Commission.[2] We agree.

The dispute here centers upon the construction to be given to Municipal Home Rule Law § 36 (5) (e), which provides as follows: "At any election at which any question or questions shall be submitted to the qualified electors of the city by a charter commission . . . , no other question or questions shall be submitted to or voted upon by such electors pursuant to any local law, ordinance, resolution or petition if such commission was created [by the mayor], and *no such other question or questions shall be submitted except by another charter commission if such commission was created otherwise*, if such other question or questions involve or relate directly or indirectly to the adoption of a new city charter, the amendment of a city charter, charter revision, the establishment of a commission to draft a new or revised city charter, or the functions, powers or duties of any elective officer of the city, except as provided in paragraph (g) of this subdivision" (emphasis added).[3]

We begin our analysis of whether this statute precludes the voters from considering any charter proposal other than the one submitted by the Mayor's Charter Commission by reiterating that the "primary consideration . . . in the construction of statutes is to ascertain and give effect to the intention of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 176; *see A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574, 580 [1996]). To ascertain that intent, we first read the statute literally and determine whether its language is unambiguous and clearly expresses the Legislature's intent (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 76; *Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]). If we find the language to be ambiguous, then we consult the statute's

**1.** Counsel for Conroy advises this Court that the Board adopted Supreme Court's suggestion and identified the respective charter proposals in this manner on the absentee and military ballots it sent out to voters.

**2.** As petitioners either failed to brief the procedural claims raised before Supreme Court or did so for the first time in their reply brief, those issues are not properly before us (*see Matter of Schmitt v Skovira*, 53 AD3d 918, 919 n 2 [2008]; *State of New York v Williamson*, 8 AD3d 925, 926 n 3 [2004]; *Fisher v Jackstadt*, 291 AD2d 689, 691 n [2002]).

**3.** Municipal Home Rule Law § 36 (5) (g) refers to charter amendments or new city charters initiated by petition pursuant to Municipal Home Rule Law § 37, which is not at issue here.

legislative history for guidance (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 120, at 242; *Ferres v City of New Rochelle*, 68 NY2d 446, 451 [1986]; *Matter of Rosen v Assessor of City of Troy*, 261 AD2d 9, 12 [1999]).

Municipal Home Rule Law § 36 (5) (e) is a densely worded, run-on sentence that describes the ballot priority of charter revision questions in two discrete circumstances. It begins by describing where it applies, namely to an election at which a charter commission is submitting a question. The statute subsequently refers to that commission as "such commission." The statute then describes two prohibitions depending upon how that commission was created. First, if "such commission" were created by the mayor, then no other questions "pursuant to any local law, ordinance, resolution or petition" shall be submitted to the voters. Second, if "such commission" were created otherwise, that is, by the city's legislative body (*see* Municipal Home Rule Law § 36 [2]) or by the petition of a specified number of electors (*see* Municipal Home Rule Law § 36 [3]), then all other questions are precluded from consideration by the voters with one exception. The exception is where another charter question was proposed by "another charter commission."

We recognize, however, that this statutory language is ambiguous and can be read, and was read by Supreme Court, to mean that a second charter question could be submitted to the voters regardless of how the commission proposing the initial charter question was created. We cannot agree with that interpretation because it would require an awkward reading of the statute, make the phrase "if such commission was created otherwise" redundant and be inconsistent with the legislative history of the amendment that added the language that is causing confusion (*see* L 1964, ch 592). Contrary to Conroy's contention, the amendment's legislative history shows no intent to extinguish the preexisting priority of a charter question proposed by a commission created by the mayor (*see* Municipal Home Rule Law former § 36 [5] [e]) and expressly comments that the amendment does not do so (*see* Mem of Citizens Union of City of NY, Bill Jacket, L 1964, ch 592). Rather, the legislative intent for the addition of the subject language is to make charter questions proposed by commissions created by the city's legislature and by petition more equal by providing that questions from both sources could appear on the same ballot (*see* Mem of Citizens Union of City of NY, Bill Jacket, L 1964, ch 592). Given that it was the former dominance of any legislative proposal over one brought by petition that the amendment sought to

remedy, we find no further intent to remove the priority of charter questions proposed by a mayor's commission (*see* Mc-Kinney's Cons Laws of NY, Book 1, Statutes § 95).

Accordingly, we conclude that Municipal Home Rule Law § 36 (5) (e) gives priority to the charter question proposed here by the Mayor's Charter Commission, and consideration by the voters of the charter question submitted by the City Council Charter Commission is precluded on the November 4, 2008 general election ballot.

Mercure, J.P., Lahtinen and Stein, JJ., concur.

Kane, J. (dissenting). I respectfully dissent. While I find that Municipal Home Rule Law § 36 (5) (e) could have been drafted with greater clarity, I do not agree that the provision is ambiguous. In my view, the overall import is apparent—namely, where, as here, a mayoral commission has placed a charter revision proposal on the ballot, no other referendum may be placed on the ballot for the voters' consideration *unless* such referendum is a proposal from another charter commission "created otherwise." Such construction is consistent with the language of the challenged subdivision, the letter and spirit of Municipal Home Rule Law § 36 as a whole, which plainly contemplates the placement of competing charter proposals on the ballot (*see e.g.* Municipal Home Rule Law § 36 [5] [d] ["if there be a conflict between the provisions of two or more proposals approved by the electors at the same election, the proposal receiving the largest number of affirmative votes shall prevail"]), and an opinion from the State Comptroller addressing this very issue (*see* 1974 Ops St Comp No. 74-1300 [Feb. 20, 1975]).* Accordingly, I would affirm Supreme Court's judgment.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed petitioners' application; application granted and the Rensselaer County Board

---

* The Comptroller's opinion provides, in relevant part, that "the prohibition contained in Municipal Home Rule Law, § 36 (5) (e) against the submission of certain questions at the same election at which propositions are submitted by a charter commission, does not apply to such questions submitted by another charter commission created otherwise. Both commissions may submit questions for voter approval at the same general election . . . If two proposed new city charters are submitted at the same election, then the one which receives the largest number of affirmative votes prevails" (1974 Ops St Comp No. 74-1300, at 3 [Feb. 20, 1975]). Thus, "[a] charter commission may be established by a city governing body notwithstanding the existence of such a commission previously created by the city mayor. Both commissions may function simultaneously, but separate and independent of each other, and submit questions for voter approval at the same general election" (1974 Ops St Comp No. 74-1300, at 3 [Feb. 20, 1975]).

of Elections is enjoined from placing a proposed charter amendment by the Troy City Council Charter Commission on the November 4, 2008 general election ballot; and, as so modified, affirmed.