Fuld, J.
The question on this appeal is whether a wife’s repudiation of the validity of her marriage and her refusal to have sexual relations with her husband unless he submits to a remarriage in a church of her religious faith entitle the husband to a decree of separation.
Mr. and Mrs. Diemer were married in 1947. He was a Protestant, 41 years of age, she a Roman Catholic, a year younger. Having anticipated problems in accommodating their religious differences, they discussed this issue and reached an agreement concerning it. Although other aspects of their agreement were in dispute at the trial, it seems clear that Mr. Diemer’s doubts about the success of their marriage had been allayed by the assurance of his bride-to-be that her ‘ ‘ main ambition ’ ’ was to be with him ‘ ‘ in all things, for all times ’ ’ and by her agreement that his faith would be her faith and his church, her church. It was in fulfillment of their agreement that the Diemers were married in the Church of the Garden, a church of Protestant persuasion, and a year and a half later Mrs. Diemer was admitted as a member of her husband’s church.
In 1950, after three years of marriage, a daughter was born to the Diemers. Although it would not be accurate to say that marital discord was born with the infant, the unfortunate fact is that her baptism and subsequent religious training proved sources of contention, at first latent, but soon overt and bitter. The religious conflict which revolved about the child reached a climax and took a new form in 1954, shortly after Mrs. Diemer suffered an accident which induced in her a fear of death. She consulted a priest and, following her talks with him, issued an ultimatum to her husband. She told him that in the eyes of her Church she was not considered married to him and that, since this was so, she would not have any further sexual relations with him unless he submitted to a second ceremony in the Roman Catholic Church. In the six or seven months which followed, Mr. Diemer continued to live with his wife and made constant attempts to change her mind, but she persisted in her refusal to have sexual relations with him.
*209 In October, 1954, realizing that his wife’s decision was final and unalterable, he left home and instituted this suit. Alleging, in substance, the facts as they are set out above, Mr. Diemer characterized his wife’s conduct as cruel and inhuman treatment ”, said that this conduct caused him suffering and seriously impaired his physical and mental well-being and sought relief in the form of a separation and custody of their child. Mrs. Diemer counterclaimed for separation, support and custody, but neither in her answer nor at the trial did she deny the essentials of her husband’s story. In fact, on both occasions she reaffirmed that she did not consider herself married and unequivocally declared that she would not have any sexual relations with her husband until they were remarried before a Roman Catholic priest.
The trial court denied both husband and wife a separation and awarded custody of the child to the wife. On - appeal by the husband—his wife sought no review—a divided Appellate Division affirmed the judgment. It was the view of both courts that the proof did not establish ‘ ‘ cruel and inhuman treatment ’ ’ on the part of the wife, apparently for two reasons: first, that the wife had not “ willfully and deliberately intended to inflict mental or physical suffering” upon the husband and, second, that he had not actually suffered any damage to his health. Although we are of the opinion that the criteria thus applied were too restrictive and that the essentials of cruelty were made out in this case (cf. Sherman v. Sherman, 7 N Y 2d 1032; Hofmann v. Hofmann, 232 N. Y. 215, 218), we prefer to place our decision of reversal and our award of a separation to the husband on the ground that the facts alleged and proved unquestionably establish the husband’s right to a separation on the ground of abandonment (Civ. Prac. Act, § 1161, subd. 3).
Our discussion necessarily centers on an analysis of Mirizio v. Mirizio (242 N. Y. 74). The parties, married in a civil ceremony, had agreed that ‘ ‘ they would not live together or consummate the marriage until performance of a religious ceremony ” in the Catholic Church (242 N. Y., at p. 76). Mrs. Mirizio refused to consummate their marriage because her husband declined to go through with the promised ceremony and, as a result, they never lived together. The wife thereupon sued for a separation based on abandonment, and the husband *210 defended on the ground that his act of not supporting her was justified by her refusal to live with him and discharge her marital obligations. After thorough consideration of the underlying issues of law and policy, this court held that the wife’s conduct amounted to “ legal misconduct ” and was “ a defense to her [separation] action ” (242 N. Y., at p. 82).
The reasoning and policy considerations which led to our decision in the Mirisio case dictate the conclusion here. Marriage, of course, involves something far more fundamental than mere physical propinquity and, as a consequence, abandonment is not limited to mere “ technical physical separation”. (Heermance v. James, 47 Barb. 120, 126.) The essence of desertion or abandonment, this court said in Mirisio, is a refusal onjffie part of one spouse to fulfill ‘ ‘ basic obligations springing -from the marriage contract” (242 N. Y. 74, 81, supra). Obviously, not every denial of a marital right will be sufficient to support a charge of abandonment. The criterion is how fundamentally the denial strikes at the civil institution of marriage. Where primary rights and duties are involved, where the denial goes to one of the foundations of the marriage, it is the policy of our law to allow a separation from bed and board.
That a refusal to have marital sexual relations undermines the essential structure of marriage is a proposition basic to this court’s decision in the Mirisio case and as obvious as it is authoritative. Sexual relations between man and woman are given a socially and legally sanctioned status only when they take place in marriage and, in turn, marriage is itself distinguished from all other social relationships by the role sexual intercourse between the parties plays in it. This being so, it may not be doubted that a total and irrevocable negation of what is lawful in marriage and unlawful in every other relationship, of what unmistakably and uniquely characterizes marriage and no other relationship, constitutes abandonment in the eyes of the law. (See, e.g., Hayes v. Hayes, 144 Cal. 625, 627 [by statute]; Johnson v. Johnson, 22 Col. 20, 23, 24; Evans v. Evans, 247 Ky. 1, 7; Benton v. Benton, 197 Md. 373, 379; Brown v. Brown, 78 N. H. 337, 338; Weckstein v. Weckstein, 136 N. J. Eq. 113, 114; Darkenwald v. Darkenwald, 66 N. W. 2d 57, 62 [N. D., by statute]; Baker v. Baker, 99 Ore. 213, 215; but see, contra, Southwick v. Southwick, 97 Mass. 327, 329; Fritz v. Fritz, *211 138 Ill. 436, 439; Dudley v. Dudley, 225 N. C. 83, 86; Segelbaum v. Segelbaum, 39 Minn. 258, 260; Schoessow v. Schoessow, 83 Wis. 553, 554.)
It is clear, therefore, that the plaintiff now before us is entitled to a separation on the ground of abandonment unless his wife had good legal cause to refuse to have sexual intercourse with him. And, as to that, it is equally clear that she had neither cause nor justification. Although it appears that she acted without malice and was activated by deep-felt and conscientious religious convictions, her motives were not sufficient in law to excuse the abandonment of her marital status. If, as a result of religious scruples, she considers her marriage invalid or non-existent and, on that account, neglects the fulfillment of a primary marital obligation, in fairness and in law her husband must likewise have the power to free himself of its obligations. While our law is not to be “ unnecessarily construed in a manner which would be hostile to religion in family life or to any other of those principles of moral, ethical and considerate conduct which ought to govern the marriage relationship ”, we may not forget that this State, “as a matter of long-continued policy, * * * has fixed the status of the marriage contract as a civil contract ”, governed by civil, not religious, law. (Mirizio v. Mirizio, 242 N. Y. 74, 83, supra.) It follows as a consequence of the civil nature of the marriage contract that a wife who disavows her marriage and repudiates a fundamental marital function out of deep-felt religious conviction has abandoned her husband just as effectively as one who has done so for base and illegitimate motives.
It is our conclusion, therefore, that on the evidence adduced the plaintiff is entitled to a separation on the ground of abandonment. However, the defendant contends — and the contention finds favor with our dissenting brethren—that the husband may not prevail on the ground of abandonment because in his complaint he characterized his wife’s conduct as cruelty, without also calling it abandonment. The argument does not impress us for the complaint indisputably alleges, and, indeed, the defendant admitted both in her answer and in her testimony, all of the facts necessary to support a cause of action for separation based on abandonment. (Civ. Prac. Act, § 241; Rules Civ. Prac., rule 280; see, also, Samios v. Samios, 285 App. Div. 1020.) The *212 mere circumstance that the plaintiff did not in his complaint denominate his wife’s conduct as “ abandonment ”, as well as “ cruel and inhuman treatment”, does not change the legal force and effect of the factual allegations. The cause of action is for separation and such a cause is undeniably alleged no matter what the pleader called it. Surely, we have advanced far beyond that hypertechnical period when form was all-important and a pleader had to attach the correct label to his complaint, at the risk of having it dismissed. It is enough now that a pleader state the facts making out a cause of action, and it matters not whether he gives a name to the cause of action at all or even that he gives it a wrong name. If this be true of the cause of action itself, it is certainly true of the ground underlying it.
Before bringing this opinion to a close, we look briefly to the plaintiff’s further requests that his wife be restrained from violating an alleged prenuptial agreement to bring their daughter up as a Protestant and that he be awarded her custody. As to the first of these, it is enough to note that the trial court found that no such prenuptial agreement was made and that there was sufficient evidence to support the finding. As to custody, an affirmance is required because, on the record before us, the primary reason offered by the father to support his claim was the asserted prenuptial agreement as to the child’s religious' training. If there is any other basis for effecting a change of custody—the child’s interest and well-being are, of course, paramount — the plaintiff is free at any time to make an application to the court at Special Term for the necessary modification or amendment of the judgment (Civ. Prac. Act, § 1170).
The judgment appealed from should be modified by directing entry of a decree of separation in favor of the plaintiff and, except as so modified, affirmed, without costs.