Victor J. Orgera, J.
Plaintiff commenced this action by service of a summons and complaint on April 28, 1975, seeking a divorce by reason of the cruel and inhuman treatment of the plaintiff by defendant. Defendant appeared but defaulted in answering the complaint.
At the inquest on July 2, 1975, the plaintiff testified that he had no marital problems prior to October 1, 1974. On that date the defendant refused to have sexual relations with him and this caused him to feel nervous, and he thought he had what were the symptoms of hypertension. About the middle of October, 1974, he was examined at the Syosset Hospital MediScreening Center. He claims he was found to have "shockingly high hypertension, high blood pressure.” However, he testified that the hospital report which was sent to him did not indicate any cause for any of their findings. Within two weeks after receiving the hospital report he consulted with his personal physician, who allegedly also found he had high blood pressure, but who "didn’t try” to indicate a cause. However, in response to plaintiffs suggestion that "it could be the problem I’m having with my marriage”, the doctor allegedly responded, "It’s very possible.” His wife’s refusal continued until the time of the inquest, although the parties continued to share the same bedroom at least until May 20, 1975, when they entered into a separation agreement. This, in substance, is the entire testimony before this court. There was no medical evidence as to the inception, treatment or duration of his alleged medical condition.
Plaintiff contends that the defendant’s refusal to have sexual relations, while capable of doing so, constituted cruel and inhuman treatment, which, when coupled with his alleged impairment of physical well-being, rendered it unsafe or improper for him to cohabit with defendant and entitles him to a divorce pursuant to subdivision (1) of section 170 of the Domestic Relations Law. In support of his contention, plaintiff cites Diemer v Diemer (8 NY2d 206); Jacobsen v Jacobsen (205 Misc 584); Mante v Mante (34 AD2d 134); Barnier v Barnier (43 AD2d 568); and Hessen v Hessen (33 NY2d 406).
In Diemer, decided in 1960, the plaintiff sought a separation on the grounds of cruel and inhuman treatment, alleging *733 among other factors, his wife’s refusal to have intercourse. The Appellate Division affirmed the trial court’s denial of a separation on those grounds. (6 AD2d 822.) The Court of Appeals, citing Mirizio v Mirizio (242 NY 74), reversed and awarded a separation on the grounds that "the facts alleged and proved unquestionably establish the husband’s right to a separation on the ground of abandonment (Civ. Prac. Act § 1161, subd. 3).” (8 NY2d 206, 209, supra.) Plaintiffs misunderstanding of the Diemer case appears to stem from a statement in the Court of Appeals decision "that the essentials of cruelty were made out” (p 209). What the court held there was that the courts below had required a quantum of proof greater than necessary to establish cruel and inhuman treatment, in that intent to inflict harm and actual impairment of health were not essential elements of a prima facie case. It did not hold that refusal to engage in sexual relations alone was sufficient to grant a separation on the grounds of cruel and inhuman treatment.
In Jacobsen (supra, p 587) the court held that: "for his unexplained, wilful and prolonged withdrawal from cohabitation, despite plaintiffs request for its resumption, a separation decree based upon the theory of abandonment is warranted.” It also indicated that "cohabitation” means more than just sexual intercourse.
In Mante (supra, p 135) the Appellate Division affirmed the trial court’s dismissal of the action but upheld the sufficiency of the complaint which alleged: "(1) after the parties had been physically apart the defendant made false accusations of adultery against the plaintiff in front of their son, then five years old, and subsequently in the Family Court during proceedings pending between the parties, and (2) the defendant from the beginning of the marriage was cold and indifferent to the plaintiff, denied her sexual attention, was rigid and harsh to her, and neglected and humiliated her.” While there was no dispute that sexual relations had ceased, the trial court found that plaintiff had not sustained the burden of proof that the defendant was to blame.
In Barnier (43 AD2d 568, supra), the same court as in Mante reversed the trial court, which had dismissed a complaint alleging both cruel and inhuman conduct and abandonment. The court stated (p 568): "In Mante v. Mante (34 A D 2d 134), we upheld the sufficiency of a complaint in an action for divorce for cruel and inhuman treatment which alleged that *734 from the beginning of the marriage the defendant was cold and indifferent to the plaintiff, denied her sexual attention, was rigid and harsh to her and neglected and humiliated her. The proof adduced at the trial in the present case reached the level necessary under Mante to support the action. Plaintiff testified to a period of sexual denial prior to his leaving the marital residence. There was proof that defendant isolated him from family life and refused to perform her wifely duties. She also threatened to 'break him’ and 'get rid’ of him. Plaintiff testified that as a result of defendant’s course of conduct he had sought and received medical care and treatment, could no longer properly perform in his work and had become, in essence, a nervous wreck.” and (p 569): "Nor was the proof insufficient to support a divorce on the theory of abandonment by reason of defendant’s refusal to engage in sexual intercourse (Diemer v. Diemer, 8 N Y 2d 206; Mante v. Mante, 34 A D 2d 134, 137, supra). There was proof that such refusal commenced and existed for some time before plaintiff’s departure from the marital residence.” Stated another way, mere refusal to engage in sexual intercourse is sufficient for abandonment (assuming it continues for the statutory period), but, refusal, standing alone, does not constitute sufficient grounds for a divorce under subdivision (1) of section 170 of the Domestic Relations Law.
In Hessen (33 NY2d 406, supra) the cruelty charged did not relate to the wife’s willful refusal to have sexual intercourse, and, of course, is not authority for this plaintiff’s argument.
No appellate court case has been found in this State which has ever granted a separation (before the 1966 statute) or a divorce (after 1966) on the grounds of cruel and inhuman treatment where the only fault was refusal to have sexual intercourse by one of the spouses. Those courts that have provided relief for the denied party have placed it on the grounds that refusal to engage in sexual relations constituted an abandonment.
The threshold question here is whether mere sexual refusal is such conduct as to be cruel and inhuman. If it is not, then the effect of the conduct on the plaintiff in this case is not material. The precise question was considered by Chief Judge Breitel, then Justice Breitel, in Yanoff v Yanoff (202 Misc 926). After a review of the authorities where aspects of the question were posed, the court answered the question in the negative, reasoning that (pp 929-930):
*735 "To this court it would seem that the Risk case is controlling. It has never been overruled. It is the only authority that has explored the rationale on the question, and the Mirizio case is distinguishable by the very distinction made by the Court of Appeals in its references to the Risk case. A similar view to this was taken by Mr. Justice Di Giovanna in the case of Lowenfish v. Lowenfish (100 N.Y.S.2d 610, 613, affd. 278 App. Div. 716).
"Policy would seem to indicate that the Risk case is also sound law. Otherwise the courts would be required to grant separations upon the narrowest of issues turning upon the most intimate of human relations and usually without the possibility of corroboration. As a practical matter, it is rare that the defense would be tendered in its simple form. It is not likely that one party to a marriage will refuse to have intercourse with the other without legal excuse unless there are many other complicating circumstances which in the nature of things would supply other issues relevant to the right to a separation and maintenance.
"It is clear from the cases cited that mere refusal to have sexual intercourse is not such misconduct as to relieve the other spouse of his marital obligations either by way of defense or by way of affirmative relief.”
While it is true that Yanoff was decided prior to the 1966 statute, it met the question head-on and considered what superficially appeared to be different standards applied as to what may be constituted to be cruel and inhuman. Judge Breitel clearly shows that Mirizio did not overrule Risk, ñor did it intend to do so. In Mirizio, the marriage was not consummated and it was this failure that the court termed such a violation of a fundamental obligation springing from the marriage contract that it "constitutes abandonment in the eyes of the law.”
The most recent expressions on the subject of cruel and inhuman treatment by the Court of Appeals are found in Hammer v Hammer (34 NY2d 545), and Hessen (33 NY2d 406, supra). In Hessen, the court analyzed the difference between subdivisions 1 and 2 of former section 200 of the Domestic Relations Law and the present subdivision (1) of section 170 of the Domestic Relations Law providing for divorce on the grounds of cruel and inhuman treatment "such that the conduct of the defendant so endangers the physical or mental well being of the plaintiff as renders it unsafe or improper for *736 the plaintiff to cohabit with the defendant.” The court commented that (p 411): "On the other hand, the application of the cruel and inhuman treatment ground to every 'dead marriage’ would also seem unwarranted. The correct view would seem to lie somewhere in between, with the courts below permitted to exercise a broad discretion in balancing the several factors in each case (see, e.g., Berlin v. Berlin, 64 Misc 2d 352, 356, mod. on other grounds 36 A D 2d 763, supra). ”
While Hessen did not have the precise question now before this court, it inferentially deemed refusal to have sexual relations, unless consented to, as constructive abandonment rather than cruel and inhuman treatment by citing Hammer (supra, decided at the same time as Hessen), which made reference to Foster & Freed, Law and The Family, New York (vol 1, § 6:19 [entitled, "Constructive Abandonment”]). The authors there cite Diemer (8 NY2d 206, supra), for the proposition that refusal to have sexual relations without good reason and where the other party has not consented to the refusal constitutes abandonment.
The right to divorce is purely statutory. The statutory time for abandonment since 1970 is one year (the 1966 act required two years) and the cause of action exists only if the abandonment has continued for the full statutory period prior to the commencement of the action. This reflects a legislative awareness of earlier decisional law deeming the conduct complained of here to be abandonment and requiring a substantial period of time to elapse before abandonment ripens into a cause of action (Cavallo v Cavallo, 79 Misc 2d 195).
Plaintiff cites Antos v Antos (Sup Ct, Suffolk County, Sullivan, J. [March 14, 1972]) in support of his contentions in this case. Without indicating that this court agrees with plaintiff’s interpretation of that case, the court would merely point out that that decision is not binding on this court and to the extent that it may be contrary to the holding herein, this court chooses not to follow it.
The plaintiff has failed to establish facts sufficient to grant him a divorce for cruel and inhuman treatment. The evidence in this case may have supported a divorce on the theory of abandonment, except for the fact that the requisite statutory period has not been met.
Plaintiff’s complaint is dismissed.