[889 NYS2d 611]

# Novel Davis, Appellant, v Shepherd Davis, Respondent.

Second Department, November 17, 2009

### APPEARANCES OF COUNSEL

*Mark F. Brancato*, Manhasset, for appellant.
*H. Michael Stern*, Garden City, for respondent.

### OPINION OF THE COURT

DILLON, J.P.

The issue on this appeal is whether the "social abandonment" of a spouse may qualify as "abandonment" and provide a ground for the dissolution of marriage under Domestic Relations Law § 170 (2). We conclude that it does not.

The plaintiff, Novel Davis, commenced this action for a divorce and ancillary relief against her husband, Shepherd Davis, by the filing of an amended summons with notice dated November 5, 2007 and a verified complaint dated January 21, 2008. The complaint alleged two causes of action, one asserting cruel and inhuman treatment under Domestic Relations Law § 170 (1) and a second asserting constructive abandonment under Domestic Relations Law § 170 (2). The cause of action for cruel and inhuman treatment is not at issue here.

The second cause of action does not contain the allegations that are customarily seen in causes of action seeking divorce based on constructive abandonment, such as, that the defendant spouse had unjustifiably and continually refused to engage in sexual relations despite repeated demands by the plaintiff spouse. Rather, the complaint alleges that the husband refused to engage in social interaction with the wife by refusing to celebrate with her or acknowledge Valentine's Day, Christmas, Thanksgiving, and the wife's birthday, by refusing to eat meals together, by refusing to attend family functions or accompany the wife to movies, shopping, restaurants, and church services, by leaving her once at a hospital emergency room, by removing the wife's belongings from the marital bedroom, and by otherwise ignoring her. The parties have been married for 41 years and they reside at the same address.

The husband filed a pre-answer motion pursuant to CPLR 3211 (a) (7) to dismiss the constructive abandonment cause of action and, alternatively, moved for summary judgment dismissing that cause of action pursuant to CPLR 3212. The husband, while contesting many of the wife's factual allegations of "social abandonment," argued that the complaint fails to state a cause

of action for a divorce based on "constructive abandonment." The wife opposed dismissal arguing, inter alia, that social abandonment has been recognized as a ground for divorce in fairly recent trial-level decisions rendered by the Supreme Courts in Nassau, Queens, and Westchester Counties.

In the order appealed from, the Supreme Court granted that branch of the husband's motion which was pursuant to CPLR 3211 (a) (7) to dismiss the second cause of action for a divorce on the ground of social abandonment and, therefore, did not reach a summary judgment analysis under CPLR 3212. The Supreme Court held that the wife's "social abandonment" allegations "do not support a cognizable legal theory." We affirm.

Domestic Relations Law § 170 sets forth six statutory grounds on which a spouse may seek to divorce another. The abandonment ground for divorce, set forth in Domestic Relations Law § 170 (2), provides that an action for a divorce may be maintained based upon "[t]he abandonment of the plaintiff by the defendant for a period of one or more years." Abandonment was recognized as a statutory ground for divorce in the Domestic Relations Law in 1966 (L 1966, ch 254, § 2). The essence of abandonment is the refusal of one spouse to fulfill "basic obligations springing from the marriage contract" (*Schine v Schine*, 31 NY2d 113, 119 [1972]; *see Mirizio v Mirizio*, 242 NY 74, 81 [1926]).

A viable cause of action under Domestic Relations Law § 170 (2) has been recognized in three different factual forms (*see* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, CPLR C170:7). The first, not applicable here, involves a defendant spouse's actual physical departure from the marital residence that is unjustified, voluntary, without consent of the plaintiff spouse, and with the intention of the departing spouse not to return (*see Kaplan v Kaplan*, 46 AD3d 628 [2007]). The second, also not applicable here, exists when the defendant spouse locks the plaintiff spouse out of the marital residence, absent justification or consent (*see Schine v Schine*, 31 NY2d 113, 119 [1972]; *Soldinger v Soldinger*, 21 AD3d 469, 470 [2005]; *Carpenter v Carpenter*, 278 AD2d 695, 696 [2000]). The third is based on "constructive abandonment," which has been routinely defined as the refusal by a defendant spouse to engage in sexual relations with the plaintiff spouse for one or more years prior to the commencement of the action, when such refusal is unjustified, willful, and continual, and despite repeated requests for the resumption of sexual relations

(*see Chellappan v Murugan*, 62 AD3d 929 [2009]; *Gulati v Gulati*, 50 AD3d 1095, 1097 [2008]; *Meccariello v Meccariello*, 46 AD3d 640, 641 [2007]; *Hathaway v Hathaway*, 16 AD3d 458, 459 [2005]).

The earliest interpretation by the Court of Appeals that arguably extended the notion of "abandonment" beyond its plain dictionary meaning arose in the 1926 case of *Mirizio v Mirizio* (242 NY 74 [1926]). *Mirizio* involved a wife's refusal to consummate a civil marriage with her husband pending the conduct of a religious ceremony in which the husband refused to partake. The Court of Appeals held in *Mirizio* that a spouse's refusal to consummate a marriage constitutes a breach of the marriage contract, permitting the dissolution of the marriage itself (*id.* at 80-81). However, the facts of the case limited its applicability to the refusal to consummate a marriage, and did not necessarily extend to a spouse's refusal to engage in sexual relations after a consummation had occurred.

The law on marital abandonment remained quiet between 1926 and 1960. In the 1960 case of *Diemer v Diemer* (8 NY2d 206 [1960]), the New York Court of Appeals engaged in a new and thorough discussion of constructive abandonment, resulting in a somewhat more expansive definition of that cause of action. *Diemer* involved a refusal by one spouse to continue sexual relations with the other spouse as a result of newly discovered religious concerns. The Court of Appeals noted that marriage "involves something far more fundamental than mere physical propinquity and, as a consequence, abandonment is not limited to mere technical physical separation" (*id.* at 210 [internal quotation marks omitted]). The criterion for abandonment, the Court continued, is how fundamentally the denial of a marital right strikes at the institution of marriage (*id.*). The Court of Appeals concluded in *Diemer* that a refusal of one spouse to engage in sexual relations with the other spouse undermines the central structure of marriage, and qualifies as an abandonment that is constructive, rather than actual, in nature (*id.* at 210-211). Constructive abandonment, therefore, was cognizable when a plaintiff spouse could prove that the abandoning spouse unjustifiably and continually refused to fulfill this basic obligation arising from their marriage contract for a period of at least one year (*see generally Diemer v Diemer*, 8 NY2d at 210; *Mirizio v Mirizio*, 242 NY at 81; *Biegeleisen v Biegeleisen*, 253 AD2d 474, 475 [1998]; *Pascarella v Pascarella*, 210 AD2d 915, 916 [1994]; *Lyons v Lyons*, 187 AD2d 415, 416 [1992]).

The law of marital abandonment returned to a period of quietude for 45 years following 1960. During those years, this Court never recognized constructive abandonment in any factual context other than that relating to the refusal of sexual relations (*see e.g. Chellappan v Murugan*, 62 AD3d at 929; *Mehl v Mehl*, 59 AD3d 402, 403 [2009]; *Reid v Reid*, 57 AD3d 960 [2008]; *Warman v Warman*, 52 AD3d 596, 597 [2008]; *Gulati v Gulati*, 50 AD3d at 1097; *Meccariello v Meccariello*, 46 AD3d at 641; *Hathaway v Hathaway*, 16 AD3d at 459; *Gonzalez v Gonzalez*, 262 AD2d 281 [1999]; *Silver v Silver*, 253 AD2d 756 [1998]; *Biegeleisen v Biegeleisen*, 253 AD2d at 475; *Tissot v Tissot*, 243 AD2d 462 [1997]; *Lyons v Lyons*, 187 AD2d at 416; *Caprise v Caprise*, 143 AD2d 968, 970 [1988]). Constructive abandonment appears to have been similarly limited by reported cases from the Appellate Divisions of the First Department (*see e.g. Haymes v Haymes*, 252 AD2d 439 [1998]; *Wilson v Wilson*, 101 AD2d 536 [1984]; *Weisman v Weisman*, 93 AD2d 737 [1983]), the Third Department (*see e.g. Conrad v Conrad*, 16 AD3d 794 [2005]; *Shortis v Shortis*, 274 AD2d 880 [2000]; *Murphy v Murphy*, 257 AD2d 798 [1999]; *Mikhail v Mikhail*, 252 AD2d 772 [1998]), and the Fourth Department (*see e.g. Smith v Smith*, 254 AD2d 788 [1998]; *Edward W.R. v Barbara A.R.*, 248 AD2d 964 [1998]; *Pascarella v Pascarella*, 210 AD2d at 915). Indeed, we have found no appellate-level determination in this state, including by the Court of Appeals, which has applied constructive abandonment to factual allegations independent of the sexual component of marriage.

Here, the wife argues nonetheless that her complaint states a cause of action for a divorce on the ground of constructive abandonment based upon the authority of two 2005 decisions— one from the Supreme Court, Nassau County, in *C.P. v G.P.* (6 Misc 3d 1034[A], 2005 NY Slip Op 50293[U] [2005]), and one from the Supreme Court, Queens County, in *Michaelessi v Michaelessi* (10 Misc 3d 1067[A], 2005 NY Slip Op 52182[U] [2005]).

The amended complaint in *C.P. v G.P.* alleged a cause of action for constructive abandonment based upon allegations that the defendant husband continually refused to engage in sexual relations, despite demands, and without justification, for the requisite year. An additional cause of action, denominated as one for cruel and inhuman treatment, contained allegations remarkably similar to those at issue here; namely, that the husband refused to celebrate various family events and holidays

with his wife, refused to eat meals with her, refused to attend social events with her, and maintained a separate bedroom. The Supreme Court held, in *C.P. v G.P.*, that while the second cause of action did not adequately state grounds for cruel and inhuman treatment, the same allegations did state a cause of action for a divorce on the ground of constructive abandonment based upon the absence of conjugal relations. The court also noted that a defendant spouse who has refused to engage in any family interaction with his plaintiff spouse for more than one year, without cause or condonation, has failed to fulfill a basic obligation of the marriage contract, no less so than the obligation of engaging in sexual relations. The Supreme Court thus recognized social abandonment allegations as sufficient to withstand the husband's dismissal motion brought under CPLR 3211 and Domestic Relations Law § 170 (2).

Similarly, *Michaelessi v Michaelessi* involved allegations by the plaintiff wife that she was socially abandoned by the defendant husband as a result of his refusal for several years to attend any social, recreational, or family functions as a couple, by the maintenance of a separate bedroom, and by the separate purchases and preparation of their daily meals. The parties disputed whether the husband had refused to engage in sexual relations. After a trial on grounds that included sharp questions of fact and an assessment of the parties' credibility, the court found that the plaintiff wife established a constructive abandonment "under any reasonable construction of the term" (2005 NY Slip Op 52182[U], *3), suggesting, without necessarily stating, a sexual and/or social abandonment.

Discussed in the papers before the Supreme Court, but not on appeal, is a third case, from the Supreme Court, Westchester County, *C.W. v G.W.* (25 Misc 3d 1241[A], 2006 NY Slip Op 52708[U] [2006]). In that case, the plaintiff wife alleged, inter alia, that she had been constructively abandoned by her husband's purported social abandonment of her. The wife alleged that the husband had, on different occasions, publicly embarrassed her, and that he was "cheap" with respect to family vacations, medical care, and work performed at the marital residence. After trial, the Supreme Court dismissed the plaintiff's social abandonment claim based on credible evidence that the parties jointly communicated, vacationed, attended family functions, celebrated birthdays and graduations, accompanied one another to serious medical appointments, and that any difficulties in their relationship fell short of a termina-

tion of conversation and contact. In other words, the Supreme Court in *C.W. v G.W.* appeared to recognize a "social abandonment" cause of action, but determined that the facts before it were insufficient to sustain it.

Here, the motion in the Supreme Court was viewed, in the first instance, as one for dismissal under CPLR 3211 (a) (7). In considering a motion to dismiss for failure to state a cause of action, the allegations contained in a plaintiff's complaint must be accepted as true (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Fischer v Sadov Realty Corp.*, 34 AD3d 630, 631 [2006]; *Hartman v Morganstern*, 28 AD3d 423, 424 [2006]; *McGuire v Sterling Doubleday Enters., L.P.*, 19 AD3d 660, 661 [2005]). Where a court considers evidentiary material in deciding the motion, the standard is not whether the plaintiff has stated a cause of action, but whether the plaintiff has a cause of action (*see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *Fischer v Sadov Realty Corp.*, 34 AD3d at 631; *Hartman v Morganstern*, 28 AD3d at 424; *McGuire v Sterling Doubleday Enters., L.P.*, 19 AD3d at 661). Here, in support of the motion to dismiss, the husband proffered his affidavit, and in opposition, the wife proffered her own affidavit. In applying the standard of CPLR 3211 (a) (7) to this action, we find, for the reasons set forth below, that there is no cognizable cause of action for "social abandonment" in New York, and that, consequently, the plaintiff's second cause of action was properly dismissed. Our determination is based upon the following five factors, any one of which supports the conclusion that "social abandonment" is not a recognized ground for divorce in this state.

First, our State Legislature has chosen to include in Domestic Relations Law § 170 (2) mere reference to "abandonment" which, in addition to its plain dictionary meaning regarding physical departure, has been expanded by the Court of Appeals only so far as its current constructive form. The plaintiff's allegations of social abandonment may appropriately be viewed as merely another way of claiming "irreconcilable differences" between spouses, that do not constitute a cognizable ground for divorce (*see Jacob v Jacob*, 8 AD3d 725, 726 [2004]; *Silvera v Silvera*, 147 AD2d 473 [1989]; *Weis v Weis*, 138 AD2d 968, 969 [1988]; *O'Connell v O'Connell*, 116 AD2d 823, 824 [1986]; *Hage v Hage*, 112 AD2d 659, 660 [1985]; *Skala v Skala*, 111 AD2d 319 [1985]; *Tsakis v Tsakis*, 110 AD2d 763, 764 [1985]; *Warguleski v Warguleski*, 79 AD2d 1107, 1108 [1981]; *Jorgensen v Jorgensen*, 67 AD2d 902 [1979]; *Denny v Denny*, 65 AD2d 658

[1978], *affd* 48 NY2d 915 [1979]), or of claiming the existence of a "dead marriage," which also is not a cognizable ground (*see Brady v Brady*, 64 NY2d 339, 345-346 [1985]; *Sim v Sim*, 241 AD2d 660, 661-662 [1997]; *Matthews v Matthews*, 238 AD2d 926 [1997]; *William MM. v Kathleen MM.*, 203 AD2d 883 [1994]; *Ostriker v Ostriker*, 203 AD2d 343, 344 [1994]; *Wilkinson v Wilkinson*, 149 AD2d 842 [1989]; *Tsakis v Tsakis*, 110 AD2d at 764; *Warguleski v Warguleski*, 79 AD2d at 1108; *Viczian v Viczian*, 64 AD2d 593 [1978]). The plaintiff's classification of her allegations as a "social abandonment," to linguistically align herself as much as possible with the abandonment language of Domestic Relations Law § 170 (2), elevates the artificial title of the claim over the substance of the causes of action that are statutorily recognized and understood.

The second reason we do not recognize social abandonment as a cognizable ground for divorce involves the longevity of the current definitional understanding of constructive abandonment. Indeed, the statutory grounds for divorce in New York have a long history. The Court of Appeals' decision in *Mirizio* (242 NY at 80-81), wherein a spouse's refusal to consummate a civil marriage qualified as a sufficient breach of the marriage contract, was rendered in 1926. The somewhat more expansive interpretation provided by the Court of Appeals in *Diemer*, in 1960, extended the concept of constructive abandonment to a spouse's postconsummation refusal to engage in sexual relations with the other spouse. Since 1960, every constructive abandonment case reported from appellate courts, without apparent exception, has applied the concept of constructive abandonment solely to the denial of sexual relations (*accord* Berke, *Domestic Relations Laws: What's Love Got To Do With It?*, NYLJ, Aug. 5, 1996, at 7, col 1). The longevity of constructive abandonment case law might not be dispositive here, in and of itself, except for the fact that courts are constrained to apply the plain language of statutes (*see Jones v Bill*, 10 NY3d 550, 555 [2008]; *Bluebird Partners v First Fid. Bank*, 97 NY2d 456, 460-461 [2002]; *Matter of Yong-Myun Rho v Ambach*, 74 NY2d 318, 322 [1989]; *Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *Janssen v Incorporated Vil. of Rockville Ctr.*, 59 AD3d 15, 28 [2008], citing *Ragucci v Professional Constr. Servs.*, 25 AD3d 43, 47 [2005], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577 [1998]) and, failing that, to resolve ambiguities of statutory language in favor of legislative intent (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 76, 94;

*Matter of Action Elec. Contrs. Co. v Goldin*, 64 NY2d 213, 221 [1984]; *see also Ferres v City of New Rochelle*, 68 NY2d 446, 451 [1986]; *Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman*, 52 NY2d 463, 471 [1981]; *Matter of Tutunjian v Conroy*, 55 AD3d 1128, 1130 [2008]; *Kearns v Piatt*, 277 AD2d 677, 678 [2000]). Nothing in the language of Domestic Relations Law § 170 (2) conveys its applicability to "social abandonment," "irreconcilable differences," or "dead marriages." Were we to nevertheless deem the statute to be somehow ambiguous, there is no legislative history, debate, or expressed intention that could convince us to expand the definition of Domestic Relations Law § 170 (2) to now encompass the absence of social interaction, as the plaintiff requests. It is, therefore, entirely understandable that social abandonment has not been a judicially recognized ground for divorce for most of the last century.

The third reason, related to the second, is that a judicial recognition of social abandonment, where none is supported in the statute, would constitute a judicial usurpation of legislative authority (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 73). It is the role of the Legislature, and not the courts, to make law. Courts may not legislate under the guise of interpreting statutes (*see Bright Homes v Wright*, 8 NY2d 157, 162 [1960]).

Fourth, we do not accept the argument that a social abandonment of one spouse by another is a provision of the marriage contract that necessarily equates with a spouse's refusal to engage in sexual relations. As discussed by the Court of Appeals in *Diemer*, "[s]exual relations between man and woman are given a socially and legally sanctioned status only when they take place in marriage and, in turn, marriage is itself distinguished from all other social relationships by the role sexual intercourse between the parties plays in it" (*Diemer v Diemer*, 8 NY2d at 210). Other statutory provisions also acknowledge the special status afforded to marital sex. For example, Domestic Relations Law § 140 (d) provides, inter alia, that a spouse's incurable physical incapacity for sexual relations, unknown to the other spouse at the time of marriage, is a basis for an annulment. In addition, Penal Law § 255.17 renders adultery a crime. By contrast, social interaction between spouses, while certainly important to a healthy marital relationship, receives less legal recognition and protection. At best, CPLR 4502 provides spouses with a privilege against testifying about mari-

tal communications. However, the CPLR does not define the privilege in terms of preserving the marriage contract itself, unlike the annulment statute of Domestic Relations Law § 140 (d) or the criminal adultery statute of Penal Law § 255.17. Accordingly, New York statutes elevate the legal protections surrounding sexual relations within marriage to a higher protected plane than social interaction between spouses. These legal protections, while providing a sound underpinning for the recognition of sex-based constructive abandonment, do not provide a similar underpinning to support divorce based upon infirm social interaction between spouses.

Fifth, there are practical difficulties associated with trying to define a social abandonment cause of action, and of how courts might conceptualize the cause as separate and distinct from traditional notions of constructive abandonment. Proponents of social abandonment causes of action might argue that its essential elements are the same as those of traditional constructive abandonment, but with a substitution of social relations for sexual relations. In such a theoretical legal exercise, a spouse who has not repeatedly demanded the resumption of sexual relations with the recalcitrant spouse would not have a cause of action for constructive abandonment (*see Warman v Warman*, 52 AD3d 596, 597 [2008]; *McGhee v McGhee*, 263 AD2d 530 [1999]; *Biegeleisen v Biegeleisen*, 253 AD2d 474, 475 [1998]; *Caprise v Caprise*, 143 AD2d 968, 970 [1988]), yet the same spouse could conceivably maintain a cause of action for a divorce on the ground of social abandonment notwithstanding the absence of a demand for sexual relations (*accord C.P. v G.P.*, 6 Misc 3d at 1034[A], 2005 NY Slip Op 50293[U] [2005]). Nonetheless, the two claims would not be without frequent overlap, and the practical application of social abandonment causes would not be so simple.

"Social abandonment" eludes clear or easy definition, unlike traditional constructive abandonment, even if both causes of action were to be patterned upon parallel legal elements. Constructive abandonment, as it has been consistently defined since 1960, raises no problematic rhetorical questions. The elements of traditional constructive abandonment are clear and determinable by triers of fact. Either sexual relations were refused to one spouse by the other, despite repeated demands, and without justification, for a year or more, or they were not. While some elemental determinations might rest upon the court's assessment of the parties' credibility in cases of

contested matrimonial grounds, courts have no apparent difficulty in applying the definition of sex-based constructive abandonment to the credible facts of any given action. The same would not be true for social abandonment, as such a cause of action, by its very nature, defies consistent and easily applied definitional interpretation. The conduct of couples on a case-by-case basis would present variations as to the degree of social interaction involving family events, meals, holidays, religious activities, spousal expectations, cultural differences, and communications. These variations might necessitate discovery of parties and nonparties, despite New York's long-standing rule prohibiting pretrial discovery of divorce grounds and marital fault (*see Corsel v Corsel*, 133 AD2d 604, 605 [1987]; *Ginsberg v Ginsberg*, 104 AD2d 482, 483 [1984]; *McMahan v McMahan*, 100 AD2d 826 [1984]; *Anonymous v Anonymous*, 71 AD2d 209, 214 [1979]; *Billet v Billet*, 53 AD2d 564 [1976]; *Hunter v Hunter*, 10 AD2d 291, 294 [1960]; *Bill S. v Marilyn S.*, 8 Misc 3d 1013[A], 2005 NY Slip Op 51093[U] [2005]; *Parker v Parker*, 2 Misc 3d 484, 491 [2003]). We predict that the recognition of a social abandonment cause of action, no matter what herculean efforts could be undertaken to establish its precise definition, would open a judicial quagmire of varied factual claims, defenses, and permutations that would be to the everlasting consternation of the matrimonial bench and bar.

We acknowledge that the issue of social abandonment as an arguable basis of divorce has assumed a degree of importance within the matrimonial bar. Indeed, it appears that more has been published on the subject outside of the trial-level case law than there is case law itself (*see e.g.* Andrew Harris, *Ruling is Viewed as Step Toward No-Fault Divorce*, NYLJ, Mar. 8, 2005, at 1, col 3; Myrna Felder, *Grounds: Refusal to Engage in Social Intercourse?*, NYLJ, Apr. 20, 2005, at 3, col 1; Lee Rosenberg, Outside Counsel, *'No Fault' Divorce: New Twist on Constructive Abandonment*, NYLJ, Mar. 15, 2005, at 4, col 4). The interest of the matrimonial bar is borne of its frustration that New York is the only state that requires a finding of fault or the living apart of spouses as a basis for divorce (*see* Matrimonial Commn, Rep to Chief Judge of St of NY, at 19 n 23 [Feb. 2006]; *see also* Frances Olsen, *The Family and the Market: A Study of Ideology and Legal Reform*, 96 Harv L Rev 1497, 1534 [1983]). The New York State Matrimonial Commission (Honorable Sondra Miller, J., Chairperson) determined that contesting matrimonial fault is costly to both litigants and the judiciary (*see* Matrimonial

Commn, Rep to Chief Judge of St of NY, at 18 [Feb. 2006]). An appellate recognition of social abandonment would be a significant leap, in the view of some, toward no-fault divorce in New York (*see* Andrew Harris, *Ruling is Viewed as Step Toward No-Fault Divorce*, NYLJ, Mar. 8, 2005, at 1, col 3; *cf.* Lee Rosenberg, Outside Counsel, *'No Fault' Divorce: New Twist on Constructive Abandonment*, NYLJ, Mar. 15, 2005, at 4, col 4), either de facto or de jure. While we are sensitive to the desire of many for a reformation of matrimonial litigation in New York including, but not limited to, the enactment of no-fault divorce grounds, this case cannot provide the vehicle for that goal.

The parties' remaining contentions have been rendered academic by our determination.

In light of the foregoing, the order is affirmed insofar as appealed from.

MILLER, LEVENTHAL and CHAMBERS, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.