[894 NYS2d 362]

Andrew T., Plaintiff, v Yana T., Defendant.

Supreme Court, New York County, December 24, 2009

## APPEARANCES OF COUNSEL

*Philip Sherwood Greenhaus*, New York City, for plaintiff. *Barbara Law Firm*, Garden City (*Dominic A. Barbara* of counsel), for defendant.

## OPINION OF THE COURT

MATTHEW F. COOPER, J.

This is yet another case that shows how New York's inexcusable failure to allow no-fault divorce is destructive both to individual litigants and to our legal system as a whole. Much has been written before about the toll that is taken on the parties, the parties' children and on the court itself in contested divorce proceedings where "grounds contests" can rage on for months or even years.[1] But even in the context of uncontested divorce proceedings—where both spouses want to end their marriage on agreed upon terms—the lack of a true no-fault basis for granting a divorce poses significant problems. Not only does it often force the person obtaining the divorce to swear to things that everybody knows are untrue, but it forces judges and special referees who preside over these cases to in effect turn a blind eye—or at least a myopic one—to what is technically perjury.

In this case, plaintiff husband was granted an uncontested divorce from defendant wife on the ground of constructive abandonment. This cause of action, often referred to as sexual abandonment, is perhaps the ground most widely used in proceedings where both sides agree to the divorce. As part of pleading his claim of sexual abandonment, plaintiff had to swear to the fact that he and defendant did not have sexual relations for over a year. Defendant is now attempting to use that statement to prevent plaintiff from seeking to establish that a child born during the course of the marriage, but conceived well after the date on which the parties allegedly stopped having sex, is actually his son.

### The Parties' Contentions

Plaintiff contends that irrespective of what he stated in the divorce pleadings, the child in question, a baby boy named Ethan, is in fact his child. He moves for an order directing that genetic marker testing be done so as to conclusively determine paternity. Upon such determination, plaintiff further seeks a declaration of paternity and the amendment of the divorce judgment to reflect that Ethan is the child of the marriage.

---

1. The recent decision of the Appellate Division, Second Department in *Davis v Davis* (— AD3d —, 2009 NY Slip Op 08579 [2009]) cites articles and reports, including that of the New York State Matrimonial Commission, which attest to how costly contesting matrimonial fault can be to litigants and the judiciary. This point was also vividly made in a 2007 Nassau County Supreme Court decision (*Molinari v Molinari*, 15 Misc 3d 1120[A], 2007 NY Slip Op 50781[U] [2007]).

Defendant opposes plaintiff's motion in all regards. She points out that plaintiff, in his verified complaint for divorce, alleged that from August 1, 2006 onward she refused to have sexual relations with him. Thus, based on plaintiff's own sworn statements, defendant contends that the child, who was not born until March 19, 2008, cannot possibly be his. Defendant further submits that if plaintiff is taking the position that Ethan is his child, this means that the sworn statements in his verified complaint concerning the lack of sexual relations must be untrue. As a result, defendant cross-moves for an order finding that plaintiff has violated Penal Law § 210.10, perjury in the second degree.

## Facts

The parties were married on July 1, 2006 in New York City. Fifteen months later, on or about September 7, 2007, plaintiff commenced an action for divorce based on two of the statutory grounds. One was the constructive abandonment of plaintiff by defendant for a period of one year proceeding commencement of the action (Domestic Relations Law § 170 [2]);[2] the other was the cruel and inhuman treatment of plaintiff by defendant (Domestic Relations Law § 170 [1]). Plaintiff ultimately relied solely on the first cause of action, constructive abandonment, in seeking the divorce.

With respect to his cause of action for constructive abandonment, plaintiff alleged in his verified complaint "that commencing on or about August 1, 2006, and continuing for a period of more than one (1) year immediately prior to commencement of this action, the defendant refused to have sexual relations with the plaintiff despite plaintiff's repeated requests to resume such relations." The complaint states that there are no children of the marriage.

Defendant neither interposed an answer to the complaint nor in any other way sought to contest the divorce. Instead she provided plaintiff with an affidavit in which she admitted service of the summons and complaint "based upon the following grounds: constructive abandonment Domestic Relations Law

---

2. At first glance, Domestic Relations Law § 170 (2) would seem to encompass only actual abandonment, as in physically departing the marital residence and refusing to return. Since at least 1960, however, courts have interpreted the provision to apply as a "constructive abandonment" to instances where a spouse refuses to have sexual relations for a period of at least one year despite the other spouse's request to resume such relations. (See Diemer v Diemer, 8 NY2d 206 [1960]; see also Davis v Davis, supra.)

§ 170 (2)." She further stated that she was consenting to the matter being placed immediately on the uncontested divorce calendar. On the same day defendant signed the affidavit, June 2, 2008, the parties, both of whom were represented by counsel, executed a separation and property settlement agreement. The agreement states that "the parties agree that the Wife shall consent to an uncontested divorce judgment being entered against her under this Index Number based upon the grounds of constructive abandonment set forth in the first cause of action of the Verified Complaint." As with defendant's affidavit, no mention is made of children, either born or expected.

Following the execution of defendant's affidavit and the parties' agreement, plaintiff promptly placed the case on the uncontested matrimonial calendar for submission. This meant that neither party had to appear in court to give testimony because the application for the divorce judgment was to be decided on the papers alone. On July 29, 2008 a judge of this court signed the judgment dissolving the marriage between the parties by reason of the constructive abandonment of plaintiff by defendant. The judgment states that there are no known children of the marriage and none are expected.

On March 19, 2008 defendant gave birth to a baby boy, Ethan. This event not only predated the divorce judgment dissolving the parties' marriage, but was prior to defendant having signed her affidavit and the parties having entered their separation and property settlement agreement. According to plaintiff, he was never aware that defendant was pregnant and he only learned about the child after the parties were already divorced. There is no father listed on Ethan's birth certificate.

### Discussion

Had plaintiff commenced this action for divorce in any place other than New York, he could have ended his marriage to defendant without casting any blame. But because New York remains the one state in the nation that requires an allegation of fault as the basis for obtaining a divorce, plaintiff had to set forth a "fault" ground upon which the divorce could be granted. (*See D.M. v S.N.*, 19 Misc 3d 1112[A], 2008 NY Slip Op 50656[U] [Sup Ct, Bronx County 2008].)[3] In this case, plaintiff relied on an allegation of constructive abandonment—that is the refusal

---

**3.** Domestic Relations Law § 170 (6) does permit parties to be divorced where they have lived apart for a year or more pursuant to a written separation agreement that has been subscribed by the parties and acknowledged or

by the defendant to have sex—to supply the required "fault." Because refusing to have sex is seen as having less negative connotations than cruelty or adultery, and because it is more factually nebulous than physical abandonment, constructive abandonment has become the ground of choice in uncontested divorce proceedings. It would be fair to say, however, that when the ground is utilized there is quite often a wide discrepancy between what is said to obtain the divorce and what really has taken place between the parties in the privacy of the marital bedroom. That discrepancy is at the heart of the matter here.

Plaintiff's Motion

In moving for an order compelling paternity testing, plaintiff is asking the court to disregard his prior sworn statements that, if true, would exclude him from being Ethan's father. Prior sworn statements are routinely used, under the theories of equitable or collateral estoppel, to prevent a litigant from taking a different position at a later point in the same proceeding or in a subsequent case. In cases involving paternity, fathers are frequently barred from denying paternity because of prior statements made to the contrary. (*See e.g. Matter of Shondel J. v Mark D.*, 7 NY3d 320 [2006].)

Less common are cases where a false statement has been used to block a party from seeking to prove paternity. In one such matter, *Matter of Duke v Black* (77 Misc 2d 239 [Fam Ct, NY County 1974]), an ex-wife's sworn statements made in an uncontested divorce action were used to prevent her from proceeding with a paternity petition brought against her ex-husband in Family Court. In the divorce, the ex-wife testified that she and her husband had not "cohabited" for over a year. Four months after the divorce was granted, she gave birth. In its opinion, the Family Court noted that the fact that "people perjure themselves in divorce actions as a matter of course" is "well-known" and "all part of the system." (*Duke*, 77 Misc 2d at 241-242.) Nevertheless, the court, finding that the need to protect our justice system from perjury outweighed even what it referred to as "the rights and interests of a blameless infant," dismissed the petition on the grounds of collateral estoppel (*id.* at 242).

---

proved in the form required to entitle a deed to be recorded. Although this could be considered a fault-free ground, the requirements of the provision are so cumbersome, so contrary to the immediate needs of most litigants and so divorced from the realities of ending troubled marriages that it is seldom utilized.

This court takes a far different view. Although perjury of any kind is not to be condoned, the context in which it arises must be taken into consideration. The sad truth is that New York's insistence on fault-based divorce ends up promoting a disregard for the truth by "fostering and encouraging the embellishment of a spouse's wrongdoing as to grounds, often with immeasurable effects upon a divorcing household." (*Molinari v Molinari*, 15 Misc 3d 1120[A], 2007 NY Slip Op 50781[U], *2 [Sup Ct, Nassau County 2007].) Here, the divorcing household includes an infant boy who, according to his birth certificate, is essentially fatherless. He is in this position despite having been born during the course of his mother's marriage to plaintiff and plaintiff having stepped forward to claim paternity. Under the circumstances, the question of whether plaintiff embellished the truth or even told outright lies in order to obtain the parties' uncontested divorce strikes me as far less important than resolving the issue of Ethan's parentage, something that is undoubtedly in his best interests.

An additional factor to be considered, particularly in weighing the equities, is the role defendant herself played in the divorce proceeding. While defendant is quick to claim that "plaintiff's perjury to the court is blatant, obvious and must be punished," she fails to address her own complicity and lack of truthfulness in this matter. It appears that at no time during the pendency of the divorce action did defendant ever inform plaintiff or the court that she was pregnant or had given birth. Moreover, defendant expressly consented to plaintiff obtaining the divorce based on the allegation that she had refused to have sex with him. Thus, the granting of the divorce was facilitated by defendant's acquiescing in what plaintiff alleged. Simply stated, if plaintiff's sworn statement that he and the defendant did not have sexual relations after August 2006 was a lie, then defendant joined in that lie and benefitted from it when the divorce was granted. Being in pari delicto, defendant does not come before this court with "clean hands," and she is scarcely in the position to seek to have plaintiff punished as a perjurer or even to have his words used against him.

Although neither side raises it, there is one additional factor that must be considered and given significant weight. This is the presumption of legitimacy. The doctrine, which holds that a child born during a marriage is presumed to be the legitimate child of that union, has long been described as "one of the strongest and most pervasive [presumptions] known to the law."

(*Matter of Findlay*, 253 NY 1, 7 [1930].) Even in this age of unerringly accurate paternity testing, the presumption of legitimacy still holds sway, particularly where it is deemed to be in the child's best interests. (*See Fung v Fung*, 238 AD2d 375 [2d Dept 1997].)

In this case, the presumption of legitimacy, the child's best interests and plaintiff's request for paternity testing go firmly hand-in-hand. Plaintiff is already presumed to be Ethan's father by virtue of having been married to Ethan's mother when the child was born. (*See David L. v Cindy Pearl L.*, 208 AD2d 502, 503 [2d Dept 1994].) Ethan's best interests lie in having his parentage confirmed, his father's name listed on his birth certificate, and his rights and status attendant to the father-son relationship fully established. (*See generally Matter of L.M. v J.S.*, 6 Misc 3d 151 [Fam Ct, Kings County 2004].) And a positive paternity test provides the means by which any doubt as to whether plaintiff is Ethan's father can be definitively erased. (*See Matter of Poldrugovaz*, 50 AD3d 117, 128 [2d Dept 2008] ["(G)enetic evidence is recognized by the Legislature as virtually unparalleled proof in establishing paternity"].)

Plaintiff's reasons for seeking to prove paternity are compelling: to legitimatize Ethan's birth, establish his parentage and provide him with the benefits of a father-son relationship. Defendant's reasons for objecting to paternity testing, on the other hand, are not compelling. She has not presented any evidence tending to exclude plaintiff as the child's father or otherwise disprove legitimacy. Her sole basis for excluding him from being considered as the potential father are the statements he made in the uncontested divorce action—allegations plaintiff was required to make so that the parties could obtain the divorce they both sought. Under the circumstances, equity and the child's best interests require that plaintiff be granted the relief he requests and that paternity testing go forward to conclusively determine if Ethan is indeed plaintiff's son.

Defendant's Cross Motion

Defendant cross-moves for an order finding that plaintiff has violated Penal Law § 210.10, which makes it a crime to make a false statement under oath that is material to the proceeding involved. This offense, perjury in the second degree, is a class E felony punishable by up to four years in prison.

The application is without merit. To begin with, this court, which presides over civil matters, is not the proper forum for determining if there has been a violation of the penal code.

"Perjury is a criminal offense . . . and the examination of witnesses to ascertain whether a basis exists for prosecution is the province of the District Attorney's Office and the Grand Jury, not a civil trial court." (*Matter of Carroll v Gammerman*, 193 AD2d 202, 206 [1st Dept 1993].) "Where the record suggests that perjury has been committed, the matter may, in the sound exercise of the court's discretion, be referred to the District Attorney's Office for investigation." (*Id.* at 206; *see also Stergiopoulos v Gklotsos*, NYLJ, July 15, 2004, at 20, col 3 [Dist Ct, Nassau County].)

Referring this matter to the District Attorney for investigation or prosecution would serve no purpose. For one thing, it is still not established that what plaintiff stated in the verified complaint—that he and defendant did not have sex during the period in question—is indeed untrue. Only a positive paternity test will show that for sure. Secondly and more importantly, if plaintiff did in fact make a false statement under oath in this matter, it was done for the benefit of both parties so that they could bypass the unreasonable hurdles that New York law imposes on couples who wish to dissolve their marriage by mutual consent. In short, if ever there was a victimless crime, this is it.

There are those who say that our justice system as a whole is "victimized" whenever a lie is told. That indeed may be the case, but though we are loathe to admit it, the fact remains that when both sides agree to a divorce and turn to sexual abandonment as the grounds, the line quickly blurs between what the law requires to have happened and what actually did happen. And if we in the court system are honest with ourselves, we will acknowledge that in many such situations a tacit agreement exists between the parties, their lawyers and even the court that the person taking the divorce will say under oath—either by way of papers on submission or testimony given at an inquest—what he or she needs to say, regardless of what the truth may be, in order for the divorce to be granted.

Suffice it to say that if the District Attorney was intent on prosecuting all the people who, within the context of uncontested divorce proceedings, falsely claim not to have had sexual relations with their spouses, there would be little time left for pursuing other crimes. As with a revelation that a husband or wife has committed the crime of adultery by having had sex outside the marriage, there are instances of wrongdoing that do not

demand the attention of the People of the State of New York in order to keep our society safe and secure.[4] This is one of them.

### Conclusion

If New York was like every other state, even those that some might think of as legally and socially backward, and had a true no-fault ground for divorce, such as "irreconcilable differences" (Mississippi) or "incompatibility" (Oklahoma), the situation here, as difficult as it already is involving a battle over a child, could have been that less complicated. This is because plaintiff would never have had to make the representations that he did about his sex life with defendant just so a New York court could free the parties from a marriage that neither side wished to continue.

Unfortunately, our state, which prides itself on being so forward-thinking in so many ways, is positively regressive as concerns the institution of marriage. When it comes to forming the marriage bond, we do not allow loving, consenting adults who happen to be of the same sex to enjoy the same rights as others. When it comes to dissolving the marriage bond, we do not allow no-longer-loving, consenting adults to obtain a divorce for reasons that are real rather than fabricated so as to meet some archaic legal requirement. It is clearly time for the Empire State, as it is known, to reject a view of marriage that is more reflective of the time of the Empire of Queen Victoria than it is of the second decade of the twenty-first century and at long last adopt the reforms that bar associations and citizens groups of all kinds have been demanding for years. Until that happens, the integrity of our legal system here in New York will continue to be needlessly compromised.

In light of the foregoing, it is hereby ordered, that plaintiff's motion is granted to the extent that genetic marker testing with regard to the child's paternity shall proceed in the manner set forth in a separate order; and it is further ordered, that defendant's cross motion is denied in all respects.

---

4. In *Davis v Davis* (*supra*), where the Second Department refused to extend the scope of Domestic Relations Law § 170 (2) to include the social abandonment of one spouse by another as a form of constructive abandonment, the court not only brought us the rather surprising news that sexual intercourse is what makes marriage different from all other relationships, but it reminded us that adultery remains a crime in New York under Penal Law § 255.17.